**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| PLANNED PARENTHOOD CENTER FOR CHOICE, *et al*.,<br><br>    Plaintiffs,<br><br>    v.<br><br>GREG ABBOTT, in his official capacity as Governor of Texas, *et al*.,<br><br>    Defendants. | No. 1:20-cv-00323-LY |

## <u>MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION AND MEMORANDUM OF LAW IN SUPPORT</u>

Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs Planned Parenthood Center for Choice ("PP Houston"), Planned Parenthood of Greater Texas Surgical Health Services ("PPGT Surgical Health Services"), Planned Parenthood South Texas Surgical Center ("PPST Surgical Center"), Whole Woman's Health, Whole Woman's Health Alliance, Southwestern Women's Surgery Center ("Southwestern"), Brookside Women's Medical Center PA d/b/a Brookside Women's Health Center and Austin Women's Health Center ("Austin Women's"), and Dr. Robin Wallace, M.D. move for a temporary restraining order, followed by a preliminary injunction, to enjoin Defendants' efforts to immediately ban most abortion procedures during the COVID-19 pandemic through their application of Governor Greg Abbott's March 22, 2020, Executive Order GA 09, "Relating to hospital capacity during the COVID-19 disaster" and the Texas Medical

Board's ("TMB") emergency amendment to 22 Tex. Admin. Code § 187.57 ("Emergency Rule"), which imposes the same requirements as Executive Order GA 09.[1]

As the American College of Obstetricians and Gynecologists ("ACOG") has recognized, abortion care is essential care because it cannot be delayed without risking the health and safety of the patient.[2] Accordingly, Plaintiffs' provision of this care is entirely consistent with the Governor's Executive Order, which bars all "surgeries and procedures" in Texas that are "not immediately medically necessary" during the coronavirus disease 2019 (COVID-19) outbreak ("Executive Order") (attached as Ex. B to Compl. for Injunctive & Declaratory Relief, ECF No. 1 ("Compl.")).

However, on March 23, 2020, Texas Attorney General Ken Paxton issued a news release singling out abortion providers, suggesting that continuing to provide most abortions (other than those performed in an immediate medical emergency) would violate the Executive Order, and noting that "[t]hose who violate the governor's order will be met with the full force of the law." Ken Paxton, Attorney Gen. of Tex., Health Care Professionals and Facilities, Including Abortion Providers, Must Immediately Stop All Medically Unnecessary Surgeries and Procedures to

---

[1] On March 24, 2020, the TMB adopted an emergency rule to enforce the Executive Order. Under preexisting law, the TMB can temporarily suspend or restrict a physician's license if the physician's "continuation in practice would constitute a continuing threat to the public welfare." 22 TAC § 187.57(b). The Emergency Rule expands this basis for discipline to include "performance of a non-urgent elective surgery or procedure." 22 Tex. Admin. Code §187.57 (emergency regulation adopted Mar. 23, 2020), *available at* https://tinyurl.com/v4pz99u (attached as Ex. C to Compl.). Because the Emergency Rule contains the same requirement to postpone surgeries and procedures that are not immediately necessary, *see id.*, Plaintiffs discuss the Emergency Rule together with the Executive Order above and throughout.

[2] ACOG et al., *Joint Statement on Abortion Access During the COVID-19 Outbreak* (Mar. 18, 2020), https://www.acog.org/news/news-releases/2020/03/joint-statement-on-abortion-access-during-the-covid-19-outbreak.

Preserve Resources to Fight COVID-19 Pandemic (Mar. 23, 2020) (attached as Ex. A to Compl.).[3] By stating that the Executive Order applies to "*any type* of abortion," the Attorney General's news release suggests the Attorney General interprets the Executive Order as limiting even the provision of medication abortion, which involves only taking medications by mouth and is not "surgery" or a "procedure" that falls within the terms of the Executive Order. *See id* (emphasis added).

During the COVID-19 outbreak, Plaintiffs—like all healthcare providers—have an important role to play in serving their communities, including by preserving much-needed medical resources that are in short supply during the pandemic and taking steps to reduce the transmission and spread of COVID-19, while continuing to provide essential healthcare services. They are doing their part by stopping all non-essential procedures that require health care staff to use personal protective equipment ("PPE"), such as sterile and non-sterile gloves and masks, and by reducing as much as possible the use of PPE during procedural abortions and other essential medical procedures that they intend to continue to provide in keeping with the terms and purpose of the Executive Order.

Given the Attorney General's aggressive threats of criminal liability, however, Plaintiffs have been forced to cancel numerous medication abortion and procedural abortion appointments this week and will be forced to cancel hundreds of future appointments, throwing abortion access in the state into disarray. The State's actions violate nearly five decades of Supreme Court precedent that categorically prohibits states from banning abortion before viability, and they are, therefore, unconstitutional.[4] Absent an order from this Court, Plaintiffs' patients will be denied

---

[3] *Available at* https://www.texasattorneygeneral.gov/news/releases/health-care-professionals-and-facilities-including-abortion-providers-must-immediately-stop-all.

[4] At minimum, even if the Executive Order does not apply to medication abortion, on the Attorney General's interpretation it bans abortions after the ten-week cutoff for medication abortion.

their right to access safe and legal previability abortion in Texas and be forced to carry pregnancies to term against their will amidst a health system overburdened by responding to COVID-19. Accordingly, Plaintiffs seek to restrain and preliminarily enjoin Defendants, their officers, agents, servants, employees, and attorneys, and any persons in active concert or participation with them from enforcing or complying with the Attorney General's interpretation of the Executive Order to prohibit abortion procedures.

## STATEMENT OF FACTS

### A.    The Governor's Executive Order

In March 2020, the United States declared a state of emergency and the State of Texas declared a state of disaster related to the COVID-19 pandemic. *See* Executive Order at 2; Proclamation by the Governor of the State of Texas (Mar. 13, 2020)[5]; Proclamation No. 9994, 85 Fed. Reg. 15,337, 2020 WL 1272563 (Mar. 13, 2020). The virus has reached every state in the country, with nearly 1,000 confirmed cases in Texas and twelve deaths at the time of this filing.[6] Federal and state officials and medical professionals expect a surge of infections that will test the limits of a health care system already facing a shortage of PPE,[7] particularly N95 masks.[8]

---

[5] *Available at* https://gov.texas.gov/uploads/files/press/DISASTER_covid19_disaster_ proclamation_IMAGE_03-13-2020.pdf.

[6] Ctrs. for Disease Control & Prevention, *Cases in U.S.* (last updated Mar. 25, 2020), https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html; Tex. Dep't of State Health Servs., *Texas Case Counts: COVID-19* (last updated Mar. 25, 2020), https://txdshs.maps.arcgis.com/apps/opsdashboard/index.html#/ed483ecd702b4298ab01e8b9cafc 8b83.

[7] Ctrs. for Disease Control & Prevention, *Interim Guidance for Healthcare Facilities: Preparing for Community Transmission of COVID-19 in the United States* (last updated Feb. 29, 2020), https://www.cdc.gov/coronavirus/2019-ncov/healthcare-facilities/guidance-hcf.html.

[8] Andrew Jacobs, Matt Richtel & Mike Baker, *'At War With No Ammo': Doctors Say Shortage of Protective Gear Is Dire*, N.Y. Times, Mar. 19, 2020, https://www.nytimes.com/2020/03/19/health/coronavirus-masks-shortage.html.

In light of this new reality, on March 22, 2020, Governor Greg Abbott issued an executive order barring "all surgeries and procedures that are not immediately medically necessary," effective immediately. Executive Order at 3.[9] By way of justification, the Executive Order states that "a shortage of hospital capacity or personal protective equipment would hinder efforts to cope with the COVID-19 disaster" and "hospital capacity and personal protective equipment are being depleted by surgeries and procedures that are not medically necessary" *Id.* at 2. Although the Executive Order does not define "personal protective equipment," Plaintiffs understand that term to refer, for example, to N95 masks, surgical masks, non-sterile and sterile gloves, disposable protective eyewear, disposable gowns, hair covers, and shoe covers, which are commonly used in surgical procedures, including—for some types of PPE—procedural abortions. Decl. of Polin C. Barraza in Supp. of Pls.' Mot. for TRO & Prelim. Inj. ("Barraza Decl.") ¶ 7, attached hereto as Ex. 1; Decl. of Alicia Dewitt-Dick in Supp. of Pls.' Mot. for TRO & Prelim. Inj. ("Dewitt-Dick Decl.") ¶¶ 6, 19, attached hereto as Ex. 2; Decl. of Andrea Ferrigno in Supp. of Pls.' Mot. for TRO & Prelim. Inj. ("Ferrigno Decl.") ¶¶ 10, 21, attached hereto as Ex. 3; Decl. of Amy Hagstrom-Miller in Supp. of Pls.' Mot. for TRO & Prelim. Inj. ("Hagstrom-Miller Decl.") ¶¶ 13, 22, attached hereto as Ex. 4; Decl. of Jessica Klier in Supp. of Pls.' Mot. for TRO & Prelim. Inj. ("Klier Decl.") ¶¶ 6, 11, attached hereto as Ex. 5; Decl. of Ken Lambrecht in Supp. of Pls.' Mot. for TRO & Prelim. Inj. ("Lambrecht Decl.") ¶¶ 7, 12, attached hereto as Ex. 6; Decl. of Ann Schutt-Aine, M.D. in Supp. of Pls.' Mot. for TRO & Prelim. Inj. ("Schutt-Aine Decl.") ¶¶ 8, 25, attached hereto as Ex.

---

[9] The Executive Order cites as its authority section 418.012, which allows the Governor to issue Executive Orders with the "force and effect of law," and section 418.061(a), which permits the Governor to "suspend the provisions of any regulatory statute prescribing the procedures for conduct of state business or the orders or rules of a state agency if strict compliance with the provisions, orders, or rules would in any way prevent, hinder, or delay necessary action in coping with a disaster." Executive Order at 2 (citing Tex. Gov't Code §§ 418.012, 418.016(a)).

7; Decl. of Pl. Robin Wallace, M.D. in Supp. of Pls.' Mot. for TRO & Prelim. Inj. ("Wallace Decl.") ¶¶ 7, 12, attached hereto as Ex. 8.

> In full, the Executive Order describes the care covered by the Executive Order as all surgeries and procedures that are not immediately medically necessary to correct a serious medical condition of, or to preserve the life of, a patient who without immediate performance of the surgery or procedure would be at risk for serious adverse medical consequences or death, as determined by the patient's physician.

Executive Order at 3. The Executive Order does not define "serious medical condition" or "serious adverse medical consequences." It further states that procedures that "would not deplete the . . . personal protective equipment needed to cope with the COVID-19 disaster" are exempt from the order. *Id.*

The Executive Order remains in effect until 11:59 PM on April 21, 2020, at the earliest, or until Governor Abbott rescinds or modifies it. *Id.* Federal officials and medical professionals expect the pandemic to last for a year or eighteen months.[10] The current shortage of PPE is expected to continue for the next three or four months.[11] Failure to comply with the Executive Order is a criminal offense punishable by a fine of up to $1,000, confinement in jail for up to 180 days, or both fine and confinement. Executive Order at 3 (citing Tex. Gov't Code § 418.173). These criminal penalties may in turn trigger administrative enforcement by the Texas Health and Human Services Commission, the Texas Medical Board, and the Texas Board of Nursing, which are authorized to pursue disciplinary action against licensees who violate criminal laws.[12]

---

[10] Denise Grady, *Not His First Epidemic: Dr. Anthony Fauci Sticks to the Facts*, N.Y. Times, Mar. 8, 2020, https://www.nytimes.com/2020/03/08/health/fauci-coronavirus.html.

[11] Ctrs. for Disease Control & Prevention, *Healthcare Supply of Personal Protective Equipment*, (last updated Mar. 14, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/healthcare-supply-ppe.html; *see also*, 22 Tex. Admin. Code § 187.57 (TMB emergency regulation does not expire until July 20, 2020).

[12] 25 Tex. Admin. Code §§ 139.32(b)(6), 135.24(a)(1)(F); 22 Tex. Admin. Code § 185.17(11); Tex. Occ. Code Ann. §§ 164.051(a)(2)(B), (a)(6); 301.452(b)(3), (B)(10).

**B.     Abortion in Texas**

Individuals seek abortion for a multitude of personal and often complex reasons. By way of example, some patients have abortions because they conclude that it is not the right time to become a parent or have additional children, they desire to pursue their education or career, or they lack the necessary financial resources or a sufficient level of partner or familial support or stability. Ferrigno Decl. ¶ 32; Hagstrom-Miller Decl. ¶ 30; Schutt-Aine Decl. ¶ 20. Other patients seek abortions because continuing with the pregnancy could pose a greater risk to their health. Schutt-Aine Decl. ¶ 20.

There are two main methods of abortion: medication abortion and procedural abortion. Schutt-Aine Decl. ¶ 12. Both methods are equally effective in terminating a pregnancy. Schutt-Aine Decl. ¶ 12. Medication abortion involves the patient ingesting a combination of two pills: mifepristone and misoprostol. Schutt-Aine Decl. ¶ 13. The patient takes the mifepristone in the health center and then, typically twenty-four to forty-eight hours later, takes the misoprostol at a location of their choosing, most often at their home, after which they expel the contents of the pregnancy in a manner similar to a miscarriage. Schutt-Aine Decl. ¶ 13. Although medication abortion is safe and effective through eleven weeks as measured from the first day of a pregnant person's last menstrual period ("LMP"), Texas law restricts this method to the first ten weeks LMP.[13] Plaintiffs provide medication abortion to that ten-week limit.

Despite sometimes being referred to as "surgical abortion," procedural abortion is not what is commonly understood to be "surgery"; it involves no incision, no need for general anesthesia, and no requirement of a sterile field. Schutt-Aine Decl. ¶ 16. In the procedural abortion known as

---

[13] Texas Health and Safety Code section 171.063 restricts the first drug to the limit on the federally approved label, which is ten weeks. *See* U.S. Food & Drug Admin., *Mifeprex (mifepristone) Information* (last updated Feb. 5, 2018), https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-providers/mifeprex-mifepristone-information.

aspiration, the clinician uses gentle suction from a narrow, flexible tube to empty the contents of the patient's uterus. Schutt-Aine Decl. ¶ 16. Before inserting the tube through the patient's cervix and into the uterus, the clinician may dilate the cervix using medication and/or small, expandable rods. Beginning around fifteen weeks LMP, clinicians generally must use instruments to complete the procedure, a technique called dilation and evacuation ("D&E"). Later in the second trimester, the clinician may begin cervical dilation the day before the procedure itself. Schutt-Aine Decl. ¶ 16. For some patients, medication abortion is contraindicated or there are other factors that would necessitate a procedural abortion, such as when the patient has an allergy to the medications or other medical conditions that make procedural abortion relatively safer. Schutt-Aine Decl. ¶ 17. Plaintiffs provide procedural abortion in both the first and second trimester. Texas law prohibits abortion care except in narrow circumstances at or after twenty-two weeks LMP. *See* Tex. Health & Safety Code § 171.044.[14]

Neither method of abortion requires extensive PPE. In fact, for medication abortion, providing patients with the medication does not require the use of any PPE. Barraza Decl. ¶ 7; Dewitt-Dick Decl. ¶ 19; Ferrigno Decl. ¶ 10; Hagstrom-Miller Decl. ¶ 13; Lambrecht Decl. ¶ 12; Klier Decl. ¶ 11; Schutt-Aine Decl. ¶ 25; Wallace Decl. ¶ 12. For procedural abortion, providers use PPE such as gloves, a surgical mask, disposable protective eyewear, disposable or washable gowns, hair covers, and shoe covers. Barraza Decl. ¶ 7; Dewitt-Dick Decl. ¶ 19; Ferrigno Decl. ¶¶ 10, 12; Hagstrom-Miller Decl. ¶¶ 13, 15; Klier Decl. ¶ 11; Lambrecht Decl. ¶ 12; Schutt-Aine

---

[14] This provision prohibits abortion when "the probable post-fertilization age of the unborn child is 20 or more weeks." Tex. Health & Safety Code § 171.044. "Post-fertilization age" means "the age of the unborn child as calculated from the fusion of a human spermatozoon with a human ovum," *id*. § 171.042, which occurs approximately two weeks after the first day of a patient's last menstrual period. Thus, twenty weeks post-fertilization is twenty-two weeks LMP.

Decl. ¶ 25; Wallace Decl. ¶ 12.[15] Most Plaintiffs do not have N95 masks, and those that do have only a small supply that they rarely, if ever, use. (Out of all of Plaintiffs' facilities and physicians, only one physician has used an N95 mask since the beginning of the COVID-19 pandemic and that physician has been reusing the same single mask as an extra precaution during all patient interactions.) Barraza Decl. ¶ 8; Ferrigno Decl. ¶ 13; Hagstrom-Miller Decl. ¶ 16; Klier Decl. ¶ 6; Lambrecht Decl. ¶ 12; Schutt-Aine Decl. ¶ 27. Plaintiffs could further conserve PPE during the pandemic were Defendants willing to waive medically unnecessary abortion restrictions such as mandated extra in-person visits prior to the abortion, the unnecessary gestational age limit for medication abortion, ultrasound requirements, and in-person follow-up requirements.[16]

Patients generally seek abortion as soon as they are able, but many face logistical obstacles that can delay access to abortion care. Decl. of Kamyon Conner in Supp. of Pls.' Mot. for TRO & Prelim. Inj. ("Conner Decl.") ¶ 5, attached hereto as Ex. 9; Dewitt-Dick Decl. ¶ 22; Schutt-Aine Decl. ¶ 23. Patients will need to schedule an appointment, gather the resources to pay for the abortion and related costs, Conner Decl. ¶ 5; Dewitt-Dick Decl. ¶ 22; Schutt-Aine Decl. ¶ 23, and

---

[15] Gloves are typically needed for any transvaginal ultrasound or laboratory exam, but are not required for transabdominal ultrasounds. Per CDC guidance, Plaintiffs also provide patients for whom there is a concern for COVID-19 or other upper respiratory disease with a mask. Ctrs. for Disease Control & Prevention, *Frequently Asked Questions about Personal Protective Equipment* (Mar. 14, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/respirator-use-faq. html.

[16] Temporarily lifting these restrictions to minimize unnecessary in-person visits would be consistent with Defendants' general response to the pandemic. 28 Tex. Admin. Code § 35.1 (emergency regulation adopted Mar. 17, 2020) (suspending regulations related to telemedicine); Tex. Med. Bd., *Texas Medical Board (TMB) Frequently Asked Questions (FAQs) Regarding Telemedicine During Texas Disaster Declaration for COVID-19 Pandemic* (Mar. 19, 2020), http://www.tmb.state.tx.us/idl/A2936385-466D-15D1-0F9E-F486D0491A27 (same); Executive Order at 3 (suspending certain hospital regulations); Office of the Tex. Governor, *Governor Abbott Takes Action to Expand Texas Hospital Capacity* (Mar. 25, 2020), https://gov.texas.gov/ news/post/governor-abbott-takes-action-to-expand-texas-hospital-capacity (waiving certain requirements for hospitals, free-standing emergency medical facilities, and end-stage renal facilities).

arrange transportation to a clinic, time off of work, and possibly childcare during appointments, often without any paid sick leave or other paid time off work. Conner Decl. ¶¶ 5, 11; Dewitt-Dick Decl. ¶ 22; Ferrigno Decl. ¶ 33; Schutt-Aine Decl. ¶ 23. Delays result in higher financial and emotional costs to the patient. Conner Decl. ¶¶ 5, 11; Dewitt-Dick Decl. ¶ 22; Ferrigno Decl. ¶ 34; Hagstrom-Miller Decl. ¶ 33; Schutt-Aine Decl. ¶ 23; Wallace Decl. ¶ 16.

Meanwhile, Texas legal restrictions on abortion, which are some of the harshest in the country, impose burdens that weigh even more heavily during the current pandemic and that also undermine Defendants' stated goal of preserving PPE. For example, Texas law requires most patients to make at least two in-person appointments for an abortion, even though most patients could obtain care just as safely in one visit.[17] Texas law also mandates medically unnecessary ultrasounds,[18] as well as in-person follow-up visits that could safely be provided through telemedicine.[19] Texas law unnecessarily restricts medication abortion to ten weeks when it can safely be provided through eleven weeks, thereby eliminating an evidence-based method to reduce the need for abortion by procedure.[20] And minor patients, unless emancipated, must obtain either written consent from a parent or a judicial bypass order before they can receive care.[21] During the COVID-19 pandemic, patients must navigate these barriers against the backdrop of job insecurity,

---

[17] Tex. Health & Safety Code § 171.012 (mandating that patients receive an ultrasound at least twenty-four hours before an abortion procedure).
[18] *Id.*
[19] Tex. Health & Safety Code § 171.063(e), 25 Tex. Admin Code § 139.53(b)(4). Indeed, to respond to the pandemic, the state has suspended restrictions on telemedicine generally, 28 Tex. Admin. Code § 35.1 (emergency regulation adopted Mar. 17, 2020); Tex. Med. Bd., *supra* note 16, and could suspend the existing restrictions barring Plaintiffs from using telemedicine to provide medication abortion and post-abortion follow-up care. Tex. Occ. Code § 111.005(c); Tex. Health & Safety Code § 171.063(e), 25 Tex. Admin Code § 139.53(b)(4).
[20] Tex. Health & Safety Code § 171.063(a)(2).
[21] Tex. Family Code § 33.003.

minimal public transit availability, and limited childcare assistance due to mandatory social-distancing and shelter-in-place orders.

The window during which a patient can obtain an abortion in Texas is limited. Pregnancy is generally forty weeks in duration, and Texas prohibits abortion except in narrow circumstances after twenty-two weeks LMP. Ferrigno Decl. ¶ 35; Hagstrom-Miller Decl. ¶ 34; Schutt-Aine Decl. ¶ 21; Wallace Decl. ¶ 10. Although abortion is a very safe medical procedure, the health risks associated with it increase with gestational age. Dewitt-Dick Decl. ¶ 22; Ferrigno Decl. ¶ 36; Hagstrom-Miller Decl. ¶ 35; Schutt-Aine Decl. ¶ 22. As ACOG and other well-respected medical professional organizations have observed, specifically in relation to the COVID-19 pandemic, abortion "is an essential component of comprehensive health care" and "a time-sensitive service for which a delay of several weeks, or in some cases days, may increase the risks [to patients] or potentially make it completely inaccessible."[22]

Indeed, while much is unknown about COVID-19, including whether it can complicate pregnancy, some pregnant people may be exposed to additional health risks from the disease. ACOG has warned that "pregnant women are known to be at greater risk of severe morbidity and mortality from other respiratory infections such as influenza and SARS-CoV. As such, pregnant women should be considered an at-risk population for COVID-19."[23]

The COVID-19 pandemic has exacerbated existing burdens on patients seeking abortion care. It has limited public transit availability, caused layoffs and other work disruptions, shuttered

---

[22] ACOG et al., *supra* note 2.

[23] ACOG, *Practice Advisory - Novel Coronavirus 2019 (COVID-19)* (last updated Mar. 13, 2020), https://www.acog.org/clinical/clinical-guidance/practice-advisory/articles/2020/03/novel-coronavirus-2019; *see also* Ctrs. for Disease Control & Prevention, *Information for Healthcare Providers: COVID-19 and Pregnant Women* (last updated Mar. 16, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/pregnant-women-faq.html.

schools and childcare facilities, and otherwise limited patients' options for transportation and

childcare support during a time of recommended social-distancing and shelter-in-place orders.[24]

Indeed, jobless claims are soaring due to the virus.[25] Conner Decl. ¶¶ 8, 11; Dewitt-Dick Decl.

¶ 23; Ferrigno Decl. ¶ 33; Hagstrom-Miller Decl. ¶ 32; Schutt-Aine Decl. ¶ 24.

## C.     Plaintiffs' Implementation of the Executive Order

Plaintiffs are committed to doing their part and following the Governor's Executive Order

in an effort to "flatten the curve," protect patients and staff, and minimize the use of PPE. Even

before the order, Plaintiffs had taken numerous steps in this direction by, for example, limiting the

number of individuals present for any procedure who would require PPE. Barraza Decl. ¶ 11;

Dewitt-Dick Decl. ¶¶ 9, 11; Klier Decl. ¶ 13; Lambrecht Decl. ¶ 15; Schutt-Aine Decl. ¶ 30;

Wallace Decl. ¶ 13.

Plaintiffs immediately prepared to comply with the Executive Order, for example adopting

policies identifying the numerous relevant factors to determine whether a procedure would be

---

[24] Tex. Exec. Order No. GA-08 (Mar. 19, 2020) (closing Texas schools and discouraging Texans from participating in non-essential activities); Jacqulyn Powell, *Will Child Care Centers Shut Down During COVID-19 Outbreak?*, KXAN (Mar. 23, 2020), https://www.kxan.com/news/education/will-child-care-centers-shut-down-during-covid-19-outbreak/ (saying that 2,400 child care operations in the state have reported closures); Metro. Transit Authority of Harris Cty., *METRO Response to Coronavirus (COVID-19)*, https://www.ridemetro.org/Pages/Coronavirus.aspx (last visited Mar. 24, 2020) (noting a "sharp ridership decline," reducing frequency of bus services, and reducing customer seating in Harris County); *see also* White House, *The President's Coronavirus Guidelines for America* (Mar. 16, 2020), https://www.whitehouse.gov/wp-content/uploads/2020/03/03.16.20_coronavirus-guidance_8.5x11_315PM.pdf; Rebecca Shabad, *Fauci Predicts Americans Will Likely Need to Stay Home for at Least Several More Weeks*, NBC News (Mar. 20, 2020) https://www.nbcnews.com/politics/donald-trump/fauci-predicts-americans-will-likely-need-stay-home-least-several-n1164701.

[25] *See* Matt Largey, *COVID-19 Is Costing People Their Jobs. Here's How to Apply for Unemployment in Texas*, KUT 90.5, Mar. 19, 2020, https://www.kut.org/post/covid-19-costing-people-their-jobs-heres-how-apply-unemployment-texas (Texas unemployment claims between March 15 and March 18 were eleven times higher than for the same period in 2019); Tex. Workforce Comm'n, *TWC Extends Call Center Hours* (Mar. 23, 2020), https://twc.texas.gov/news/twc-extends-call-center-hours (Texas Workforce Commission reporting that they have received "an unprecedented call volume as a result of COVID-19").

permissible under the Order. Barraza Decl. ¶ 3; Ferrigno Decl. ¶ 22; Hagstrom-Miller Decl. ¶ 23; Klier Decl. ¶ 17; Lambrecht Decl. ¶ 8; Schutt-Aine Decl. ¶ 9. They did so while continuing to make every effort to conserve PPE and to reduce the possibility of spread and transmission of COVID-19. Barraza Decl. ¶¶ 11–13; Dewitt-Dick Decl. ¶¶ 10–13; Ferrigno Decl. ¶¶ 15–19; Hagstrom-Miller Decl. ¶¶ 18–20; Klier Decl. ¶¶ 13–16; Lambrecht Decl. ¶¶ 15–16; Schutt-Aine Decl. ¶¶ 30–31; Wallace Decl. ¶ 13.

Consistent with the Executive Order, Plaintiffs determined that abortion is a time-sensitive service and an essential component of comprehensive care, for which a delay of thirty days or even less increases the risks to patients, or makes abortion completely inaccessible, and that such delay in accessing or inability to access an abortion exposes patients to risk of a serious adverse medical consequence. In reaching this determination, Plaintiffs considered such facts and authorities as the following:

- "The purpose and text of EO GA 09, namely: concern for 'a shortage of hospital capacity or personal protective equipment' that could 'hinder efforts to cope with the COVID-19 disaster.'"

- "The stated 30-day duration of the delay, taking into account the Ambulatory Surgery Center Association's 'COVID-19: Guidance for ASCs for Necessary Surgery,' issued March 18, 2020, which states that consideration of whether delay of a surgery is appropriate must account for risk to the patient of delay, 'including the expectation that a delay of 6–8 weeks or more may be required to emerge from an environment in which COVID-19 is less prevalent.'"[26]

- "The fact that pregnancy has a duration of approximately forty weeks, as measured from the first day of a woman's last menstrual period (LMP) and that most abortions are banned in Texas beginning at 20 weeks gestation [the equivalent of 22 weeks LMP]. Tex. Health & Safety Code § 171.044."

---

[26] *See also* Am. Surgical Ctr. Ass'n, *COVID-19: Guidance for ASCs on Necessary Surgeries* (last updated Mar. 19, 2020), https://www.ascassociation.org/asca/resourcecenter/latestnewsresourcecenter/covid-19/covid-19-guidance (quoting Am. Coll. of Surgeons, *COVID-19: Recommendations for Management of Elective Surgical Procedures* (Mar. 13, 2020), https://www.facs.org/about-acs/covid-19/information-for-surgeons/elective-surgery).

- "The fact that, while abortion is an extremely safe medical procedure, delay increases the risk to the health of the patient. *See, e.g.,* Nat'l Acads. of Scis. Eng'g & Med., The Safety & Quality of Abortion Care in the United States 77–78, 162–63 (2018). Delay is of particular concern during the COVID-19 crisis, given guidance from the Centers for Disease Control ('CDC') and American College of Obstetricians and Gynecologists ('ACOG') that pregnant women may be at heightened risk of severe illness, morbidity, or mortality from viral respiratory infections such as COVID-19."[27]

- "The Joint Statement by the American College of Obstetricians and Gynecologists ('ACOG'), the American Association of Gynecologic Laparoscopists, *et al.*, on Elective Surgeries,[28] issued March 16, 2020, which states that 'Obstetric and gynecologic procedures for which a delay will negatively affect patient health and safety should not be delayed. This includes gynecologic procedures and procedures related to pregnancy for which delay would harm patient health. Obstetrician–gynecologists and other health care practitioners should be aware of the unintended impact that policies responding to COVID-19 may have, including limiting access to time-sensitive obstetric and gynecological procedures.'"

- "The Joint Statement by the ACOG, the American Board of Obstetrics & Gynecology, *et al.,* on Abortion Access During the COVID-19 Outbreak,[29] issued March 18, 2020, which states that to 'the extent that hospital systems or ambulatory surgical facilities are categorizing procedures that can be delayed during the COVID-19 pandemic, abortion should not be categorized as such a procedure' because it 'is an essential component of comprehensive health care' and 'a time-sensitive service for which a delay of several weeks, or in some cases days, may increase the risks [to patients] or potentially make it completely inaccessible.'"

*See, e.g.*, Ex. A to Barraza Decl. (PPST Surgical Center policy); Ferrigno Decl. ¶¶ 10–19; Hagstrom-Miller Decl. ¶¶ 13–20; Ex. A to Lambrecht Decl. (PPGT Surgical Health Services policy); Ex. B to Schutt-Aine Decl. (PP Houston policy); Klier Decl. ¶¶ 11–12; Dewitt-Dick Decl. ¶ 26; Wallace Decl. ¶¶ 11–14.

---

[27] ACOG, *Practice Advisory: Novel Coronavirus 2019 (COVID-19), supra* note 23; Ctrs. for Disease Control & Prevention, *Information for Healthcare Providers: COVID-19 and Pregnant Women*, *supra* note 23.

[28] Am. Ass'n of Gynecologic Laparoscopists et al., *Joint Statement on Elective Surgery During COVID-19 Pandemic* (Mar. 16, 2020), https://www.aagl.org/news/joint-society-message-on-covid-19/.

[29] ACOG et al., *supra* note 2.

**D.     The Attorney General's Threat to End Abortion Access and the Resulting Impact**

Late in the afternoon on March 23, 2020, Plaintiffs received word of the Texas Attorney General's press release suggesting that he believes continuing to provide *any* abortion care (other than for an immediate medical emergency) would violate the Executive Order, and warning that "[t]hose who violate the governor's order will be met with the full force of the law." Plaintiffs sought clarification from the Attorney General's office as to whether he was interpreting the Executive Order to apply to medication abortion as well as procedural abortion. The office provided no such clarification.

If the Executive Order is enforced as interpreted by the Attorney General, it effectively bans almost all abortions in Texas for the duration of the COVID-19 public health emergency. Given the Attorney General's enforcement threat and the serious criminal and other penalties specified in the Executive Order and Emergency Rule, Plaintiffs, their physicians, and staff have been forced to cancel scheduled appointments and to stop providing *all* abortion care (other than for an immediate medical emergency) that entails the use of PPE. Barraza Decl. ¶ 15; Dewitt-Dick Decl. ¶ 8; Ferrigno Decl. ¶ 28; Hagstrom-Miller Decl. ¶ 28; Klier Decl. ¶ 17; Lambrecht Decl. ¶ 18; Schutt-Aine Decl. ¶ 33; Wallace Decl. ¶ 15. Even if the Executive Order is understood (consistent with its plain language) not to apply to medication abortion, which is provided through medications by mouth and is not a "procedure," it still operates as a previability ban for those patients who would otherwise obtain a procedural abortion—that is, all those who are ten or more weeks pregnant and those with earlier pregnancies for whom medication abortion is not appropriate.

Under either interpretation, the Executive Order will deprive Plaintiffs' patients of the freedom to make a very personal decision in consultation with their families and doctors, which is all the weightier given the increased health risks to pregnant persons during the COVID-19

pandemic. Lambrecht Decl. ¶ 18; Schutt-Aine Decl. ¶¶ 10, 36. It will harm patients' physical, emotional, and financial wellbeing and the wellbeing of their families. Conner Decl. ¶ 9; Dewitt-Dick Decl. ¶ 28; Ferrigno Decl. ¶ 34; Hagstrom-Miller Decl. ¶ 33; Lambrecht Decl. ¶ 18; Schutt-Aine Decl. ¶ 36; Wallace Decl. ¶ 16. Without access to Plaintiffs' services, patient care will be delayed, and in some cases, denied altogether. Barraza Decl. ¶ 15; Conner Decl. ¶¶ 9–11; Dewitt-Dick Decl. ¶ 8; Ferrigno Decl. ¶¶ 26–29, 34–35; Hagstrom-Miller Decl. ¶¶ 27–29, 33–34; Klier Decl. ¶¶ 17–18; Lambrecht Decl. ¶¶ 18–20; Schutt-Aine Decl. ¶¶ 33–39; Wallace Decl. ¶ 15. As a result, these patients will be forced to carry pregnancies to term, resulting in a deprivation of their fundamental right to determine when and whether to have a child or to add to their existing families, as well as in greater health and other risks to them and their children. Conner Decl. ¶ 11; Ferrigno Decl. ¶ 34; Hagstrom-Miller Decl. ¶ 33; Schutte-Aine Decl. ¶ 38; Wallace Decl. ¶ 16. Finally, by targeting abortion, the Executive Order is likely to *increase* the need for other pregnancy-related healthcare and attendant medical facilities, personnel, and PPE. Schutt-Aine Decl. ¶¶ 35–36.

## ARGUMENT

Plaintiffs seek a temporary restraining order, and thereafter, a preliminary injunction, to prevent the Attorney General's enforcement threats and the Executive Order from inflicting harm on Plaintiffs' patients who are unable to access abortion in Texas under the Executive Order as interpreted by the Attorney General. In ruling on such a motion, the Court considers four factors, all of which weigh heavily in Plaintiffs' favor: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the injury to Plaintiffs outweighs any harm the injunction might cause Defendants; and (4) granting the injunction will not disserve the public interest. *See*, *e.g.*, *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 452 (5th Cir. 2014) ("*Jackson I*"); *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).

As discussed below, Plaintiffs are entitled to injunctive relief because they are likely to succeed on the merits of their claims. The Attorney General's interpretation of the Executive Order as banning almost all abortions directly contravenes decades of binding Supreme Court precedent holding that a state may not ban abortion before viability. Moreover, injunctive relief will prevent severe and irreparable harm to Plaintiffs' patients; is consistent with the balance of hardships; and serves the public interest. Accordingly, this Court should grant injunctive relief.

## I.  PLAINTIFFS WILL SUCCEED ON THE MERITS OF THEIR SUBSTANTIVE DUE PROCESS CLAIM.

Plaintiffs are certain to succeed on the merits of their claim that the Attorney General's interpretation of the Executive Order violates Plaintiffs' patients' liberty rights under the Fourteenth Amendment by banning abortion before viability. Nearly five decades ago, the Supreme Court struck down as unconstitutional a state criminal abortion statute proscribing all abortions except those performed to save the life of the pregnant person. *Roe v. Wade*, 410 U.S. 113, 166 (1973). Specifically, the Supreme Court held that the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution protects a woman's right to choose abortion, *id.* at 153–54, and prior to viability, a state has *no interest* sufficient to justify a ban on abortion, *id.* at 163–65. Rather, a state may proscribe abortion only *after* viability, and even then it must allow abortion where necessary to preserve the life or health of the patient. *Id.* at 163–64.

The Supreme Court has repeatedly adhered to this core holding. For example, more than twenty-five years ago, in *Planned Parenthood of Southeastern Pennsylvania v. Casey*, the Court reaffirmed *Roe*'s "central principle" that "[b]efore viability, the State's interests are not strong enough to support a prohibition of abortion." 505 U.S. 833, 846, 871 (1992); *id.* at 871 (asserting that any state interest is "insufficient to justify a ban on abortions prior to viability even when it is subject to certain exceptions"). Although a plurality in *Casey* announced an "undue burden"

standard, under which "a provision of law [restricting previability abortion] is invalid[] if its purpose or effect is to place a substantial obstacle in the path of a woman seeking an abortion," 505 U.S. at 878 (plurality opinion), it emphasized:

> Our adoption of the undue burden analysis does not disturb the central holding of *Roe v. Wade*, and we reaffirm that holding. Regardless of whether exceptions are made for particular circumstances, a State may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability.

*Id.* at 879; *see also id.* at 846 ("*Roe*'s essential holding . . . is a recognition of the right of the woman to choose to have an abortion before viability."). *Roe*'s central principle has been repeatedly reaffirmed by the Court, including as recently as 2016. *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016).

Unsurprisingly, attempts to ban abortion prior to viability have been uniformly rejected by courts across the country and by the Fifth Circuit as recently as last month. *See*, *e.g.*, *Jackson Women's Health Org. v. Dobbs*, 951 F.3d 246, 248 (5th Cir. 2020) (per curiam) ("*Jackson III*") (ban on abortions starting at six weeks); *Jackson Women's Health Org. v. Dobbs*, 945 F.3d 265, 268–69 (5th Cir. 2019) ("*Jackson II*") (ban on abortions starting at fifteen weeks); *MKB Mgmt. Corp. v. Stenehjem*, 795 F.3d 768, 772–73 (8th Cir. 2015) (ban on abortions after six weeks), *cert. denied*, 136 S. Ct. 981 (2016); *Edwards v. Beck*, 786 F.3d 1113, 1117–19 (8th Cir. 2015) (ban on abortions after twelve weeks), *cert. denied*, 136 S. Ct. 895 (2016); *Isaacson v. Horne*, 716 F.3d 1213, 1217, 1231 (9th Cir. 2013) (ban on abortions starting at twenty weeks), *cert. denied*, 134 S. Ct. 905 (2014); *Jane L. v. Bangerter*, 102 F.3d 1112, 1117–18 (10th Cir. 1996) (ban on abortions starting at twenty weeks), *cert. denied*, 520 U.S. 1274 (1997); *Sojourner T. v. Edwards*, 974 F.2d 27, 29, 31 (5th Cir. 1992) (ban on all abortions), *cert. denied*, 507 U.S. 972 (1993); *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 962 F.2d 1366, 1368–69, 1371–72 (9th Cir. 1992) (ban on all abortions), *cert. denied*, 506 U.S. 1011 (1992); *Bryant v. Woodall*, 363 F. Supp. 3d 611,

630–32 (M.D.N.C. 2019) (ban on abortions starting at twenty weeks), *appeal docketed*, No. 19-1685 (4th Cir. June 26, 2019); *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, No. 3:19-CV-178-DJH, 2019 WL 1233575, at *1 (W.D. Ky. Mar. 15, 2019) (ban on abortions after six weeks).

In 2019, several states passed a number of bans on abortion—and in each place where a ban restricted access to abortion, every single court blocked the ban from taking effect. *See, e.g.*, *Robinson v. Marshall*, 415 F. Supp. 3d 1053, 1059 (M.D. Ala. 2019) (ban on nearly all abortions); *SisterSong Women of Color Reprod. Justice Collective v. Kemp*, 410 F. Supp. 3d 1327, 1350 (N.D. Ga. 2019) (ban on abortions after six weeks); *Reprod. Health Servs. of Planned Parenthood of St. Louis Region, Inc. v. Parson*, 389 F. Supp. 3d 631, 640 (W.D. Mo. 2019), *as modified*, 408 F. Supp. 3d 1049, 1053 (W.D. Mo. 2019) (ban on abortions after various weeks), *appeal docketed*, Nos. 19-2882, 19-3134 (8th Cir. Oct. 3, 2019); *Little Rock Family Planning Servs. v. Rutledge*, 397 F. Supp. 3d 1213, 1324 (E.D. Ark. 2019) (ban on abortions after eighteen weeks), *appeal docketed*, No. 19-2690 (8th Cir. Aug. 9, 2019); *Jackson Women's Health Org. v. Dobbs*, 379 F. Supp. 3d 549, 252 (S.D. Miss. 2019), *aff'd*, 951 F.3d 246, 248 (5th Cir. 2020) (ban on abortions after six weeks); Order Granting Stipulated Preliminary Injunction as to State Defendants, *Planned Parenthood Ass'n of Utah v. Miner*, No. 2:19-cv-00238 (D. Utah Apr. 18, 2019), ECF No. 34 (ban on abortions after eighteen weeks).

The Fifth Circuit has consistently applied controlling precedent holding that states may not enact measures that ban all or nearly all previability abortions, including twice in just the last six months. *See Jackson III*, 951 F.3d at 248 (holding that previability abortion bans are "unconstitutional under Supreme Court precedent without resort to the undue burden balancing test," and striking down a ban on abortions as early as six weeks with exceptions); *Jackson II*, 945 F.3d at 268 (holding "[s]tates may *regulate* abortion procedures prior to viability so long as they

do not impose an undue burden on the woman's right, but they may not ban abortions," and striking down ban on previability abortions at fifteen weeks with exceptions); *Jackson I*, 760 F.3d at 459 (preliminarily enjoining abortion restriction that would shut down the only remaining clinic in the state and force patients to travel to a neighboring state as an unconstitutional undue burden); *see also Okpalobi v. Foster*, 190 F.3d 337, 357 (5th Cir. 1999) ("A measure that has the effect of forcing all or a substantial portion of a state's abortion providers to stop offering such procedures creates a substantial obstacle to a woman's right to have a pre-viability abortion, thus constituting an undue burden under *Casey*."), *vacated on reh'g en banc on other grounds*, 244 F.3d 405 (5th Cir. 2001); *Sojourner T.*, 974 F.2d at 29, 31 (striking down ban on all abortions with exceptions).

It is beyond dispute that the Attorney General's interpretation of the Executive Order has the effect of banning all abortions (other than those performed in an immediate medical emergency) in Texas starting at ten weeks LMP, and even earlier among patients for whom medication abortion is not appropriate. *Cf. Jackson II*, 945 F.3d at 271 (holding that challenged law was a previability *ban* on abortion and not a *regulation* on abortion because it "peg[ged] the availability of abortions to a specific gestational age that undisputedly prevents the abortions of some non-viable fetuses"). But the Attorney General's statement goes even further and appears to threaten enforcement against medication abortion in many instances as well, which has forced Plaintiffs to cancel hundreds of scheduled abortion appointments. In any event, whether or not the ban extends to medication abortion, it remains a ban on previability abortions, which contravenes decades of Supreme Court precedent, including *Roe.*

Because the Executive Order operates as a ban on previability abortion, this Court need not look further; however, even if the Court were to apply the undue-burden test from *Casey*, Plaintiffs would certainly succeed on the merits. "A finding of an undue burden is a shorthand for the

conclusion that a state regulation has the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus." *Casey*, 505 U.S. at 877. A restriction that, "while furthering [a] valid state interest, has the effect of placing a substantial obstacle in the path of a woman's choice cannot be considered a permissible means of serving its legitimate ends." *Whole Woman's Health*, 136 S. Ct. at 2309 (alteration in original) (quoting *Casey*, 505 U.S. at 877). As the Supreme Court has held, "*Casey* requires courts to consider the burdens a law imposes on abortion access together with the benefits those laws confer." *Id.* at 2298.

Here, in terms of the burdens, the Attorney General's current enforcement threat operates as a ban, whether for all abortions or for all abortions after ten weeks.[30] The Executive Order is in effect for at least thirty days, and in fact could remain in effect for months, which would push many abortion patients past the legal limit for an abortion in Texas. Moreover, even if some patients affected by the order are able to obtain an abortion if the order is lifted sooner than anticipated, they will still suffer increased risks to their health by the delay in access to abortion care. Ferrigno Decl. ¶¶ 34, 36; Hagstrom-Miller Decl. ¶¶ 33, 35; Klier Decl. ¶ 18; Schutt-Aine Decl. ¶ 39. Thus, the Executive Order overwhelmingly harms individuals seeking an abortion.

These harms vastly outweigh any potential benefits from the Executive Order as interpreted by the Attorney General. The State asserts two interests—neither of which is furthered by the Attorney General's interpretation. On its face, the Executive Order is intended to preserve hospital capacity and PPE. Plaintiffs share those interests, but a blanket abortion ban does not serve either one and, in fact, as so interpreted the Executive Order is more likely to aggravate than alleviate the public health crisis arising from the pandemic. As to the first interest, legal abortion is safe,

---

[30] Even on the narrower construction, the Executive Order would not only ban abortion after ten weeks but also harm patients presenting before ten weeks for whom procedural abortion is medically indicated or the only appropriate option.

and complications associated with abortion—including those requiring hospital care—are exceedingly rare. *Whole Woman's Health*, 136 S. Ct. at 2311–2312, 2315. Nearly all abortions in Texas are provided in outpatient facilities, such as Plaintiffs' abortion facilities and ambulatory surgical centers, not hospitals.[31] Thus, Plaintiffs' provision of abortion would not deplete hospital capacity.

Regarding the second interest stated in the Executive Order—to preserve PPE—even in the absence of the Attorney General's threat to ban procedural abortion, Plaintiffs have already taken steps to preserve PPE, including by, for example, limiting the number of individuals allowed into the facility and during a procedural abortion and postponing other in-person, non-essential visits that may require PPE. Plaintiffs are exploring additional measures to preserve PPE, such as washable masks and gowns. Moreover, Plaintiffs either do not use N95 masks or do so only rarely, and this is the PPE that appears to be in shortest supply in battling the COVID-19 pandemic in Texas and around the country.[32] As such, banning abortions does little to nothing to prevent the

---

[31] Tex. Health & Human Servs., *Induced Terminations of Pregnancy, 2017 Selected Characteristics of Induced Terminations of Pregnancy (2018)*, https://hhs.texas.gov/about-hhs/records-statistics/data-statistics/itop-statistics (in 2017, 99.8% of abortions among Texas residents in Texas were provided in abortion facilities or ambulatory surgical centers).

[32] *See, e.g.*, Ariana Eunjung Cha et al., *Hospital Workers Battling Coronavirus Turn to Bandannas, Sports Goggles and Homemade Face Shields Amid Shortages*, Wash. Post (Mar. 19, 2020), https://www.washingtonpost.com/health/2020/03/19/hospital-workers-battling-coronavirus-turn-bandanas-sports-goggles-homemade-face-shields-amid-shortages/ ("Darrell Pile, CEO of the Southeast Texas Regional Advisory Council, which is responsible for distributing resources to local health providers from the Strategic National Stockpile, said the amount it had received so far is 'horribly inadequate to meet existing demand.'"); Mike Marut, *'We Are in a War': Austin Doctors Running Out of Protective Equipment to Treat Coronavirus Patients*, KVUE (Mar. 20, 2020), https://www.kvue.com/article/news/health/coronavirus/coronavirus-doctors-masks-austin-protective-equipment-goggles/269-a803b7ac-1ab0-4a6a-bfb8-af8b08d72028; Scott Friedman, *Running Low on Supplies, Firefighters, Paramedics Scramble to Find Ways to Protect Themselves Against COVID-19*, NBCDFW (Mar. 24, 2020), https://www.nbcdfw.com/news/coronavirus/as-north-texas-first-responders-tear-through-protective-masks-firefighter-says-unprecedented-is-a-good-word-to-be-using-right-now/2337271/; Amelia Nierenberg, *Where Are All the Masks?*, N.Y. Times (Mar. 22, 2020), https://www.nytimes.com/article/face-masks-coronavirus.html ("Many

"deplet[ion]" of the personal protective equipment needed "to cope with the COVID-19 disaster." Executive Order at 2.

Even before the Executive Order, Plaintiffs had taken steps to preserve PPE by minimizing the number of encounters a patient needs for care, Barraza Decl. ¶¶ 11–12; Wallace Decl. ¶ 13, but Texas law restricts this flexibility. Plaintiffs could make further progress in preserving PPE, as well as reducing overall contagion risks during the pandemic, were Defendants willing to consider temporarily waiving medically unnecessary abortion restrictions that limit their ability to adapt to this crisis—such as Texas's requirement that patients make an extra trip to the health center and receive an ultrasound before returning for an abortion.[33]

Indeed, far from being necessary to address the COVID-19 crisis, an interpretation of the Executive Order that broadly prohibits abortion could well exacerbate the COVID-19 crisis, including by forcing patients to attempt to travel to other states to try to access abortion care, and potentially using public transportation, even though public health experts have advised the public to minimize activities outside the home. Conner Decl. ¶ 11; Hagstrom-Miller Decl. ¶ 32; Klier Decl. ¶ 18; Schutt-Aine Decl. ¶¶ 37–38. Moreover, the Executive Order may delay access for patients experiencing health problems because providers are uncertain as to whether these problems meet the Executive Order's emergency exception, which could endanger those patients

---

doctors said they were being given just one mask, to use indefinitely. Between patients, they spray it down with a disinfectant or wipe it off, hoping for the best."); Associated Press, *US Struggles to Fill Requests for Protective Gear*, N.Y. Times (Mar. 18, 2020), https://www.nytimes.com/aponline/2020/03/18/business/ap-us-virus-outbreak-supplies.html (CDC sending masks from strategic stockpile that have exceeded their shelf life "due to the potential urgent demand caused by the COVID-19 public health emergency").

[33] As the Executive Order states, it is within the Governor's power to suspend regulatory requirements that "in any way prevent, hinder, or delay necessary action in coping with a disaster." Executive Order at 1 (quoting Tex. Gov't Code § 418.016(a)).

and potentially require that they receive *more* invasive care (with attendant use of PPE) or even hospital-based care. Schutt-Aine Decl. ¶ 36. Finally, delaying patients in accessing abortion ultimately requires increased use of PPE. Even if the Executive Order is ultimately limited to thirty days, this delay will push patients early in pregnancy now beyond the time for which they would be legally eligible for medication abortion (PPE is not needed to hand a patient pills), instead requiring one-day aspiration procedures. Ferrigno Decl. ¶ 35; Hagstrom-Miller Decl. ¶ 34; Schutt-Aine Decl. ¶ 35; Wallace Decl. ¶ 15. For some patients, the delay will push them into two-day D&E procedures, which necessarily require more PPE than a single visit or a medication abortion. Ferrigno Decl. ¶ 35; Hagstrom-Miller Decl. ¶ 34; Klier Decl. ¶ 18; Schutt-Aine Decl. ¶¶ 35, 39.

Even if banning or restricting abortion during the COVID-19 crisis would result in some small, temporary preservation of PPE, the harm to patients from not being able to access abortion for a month or more, if ever, is extreme and simply cannot be outweighed by any benefits of Defendants' application of the Executive Order. While Plaintiffs are mindful of the need for everyone in Texas and around the country to do their utmost to mitigate the effects of COVID-19 on our health systems, the reality is that very little, if any, PPE would actually be conserved by banning or restricting abortion. Most procedural abortions in Texas are single-day procedures, where a patient encounters either one or two clinicians, who each wear, at most, a paper mask (not an N95 respirator), two-to-three pairs of gloves, and a gown. Dewitt-Dick Decl. ¶ 16; Hagstrom-Miller Decl. ¶ 13; Klier Decl. ¶ 11; Schutt-Aine Decl. ¶ 25. However, patients forced by Defendants to wait until the middle of the second trimester or later might be forced to undergo a two-day procedure, which would mean two consecutive trips to a health center; twice as much contact with health care providers; and at least twice the amount of PPE used—for a total of three visits.

Patients who are prevented from obtaining abortions at all and thus who must seek prenatal care—or those who must seek prenatal care during the months they must wait for the Executive Order to expire—will also have to endure at least one (though often multiple) trips to heath care facilities to meet with health care providers and obtain services that involve the use of PPE. Schutt-Aine Decl. ¶ 26. Ultimately, then, pregnant patients will require care from health care providers using PPE, whether the pregnancy is terminated or not. Moreover, the public health crisis caused by the COVID-19 pandemic involves not only a shortage of PPE, but also a shortage of hospital beds. Unlike labor and delivery, hospital beds are not utilized in providing outpatient abortion.

The benefit of reducing the use of PPE in one segment of the healthcare system cannot possibly outweigh the burdens here, where abortion care is time-sensitive, and where barring abortion (but not any other essential surgery or procedure) would have only a minimal effect on the availability of PPE and no effect on the PPE in shortest supply (the N95 mask). Plaintiffs therefore have established that they are likely to succeed on the merits of their claim that the Executive Order violates the substantive due process rights of their patients.

## II.     PLAINTIFFS' PATIENTS WILL SUFFER IRREPARABLE HARM IF THE BAN IS ENFORCED.

Plaintiffs' patients will suffer serious and irreparable harm in the absence of a temporary restraining order and preliminary injunction. The Attorney General's interpretation of the Executive Order prevents Texans from exercising their fundamental constitutional right to terminate a pregnancy. It is well established that, where a plaintiff establishes a constitutional violation, no further showing of irreparable injury is necessary. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of [constitutional] freedoms . . . unquestionably constitutes irreparable injury."); *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further

showing of irreparable injury is necessary." (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (2d ed. 1995))); *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. Unit B Nov. 1981) (When "the constitutional right of privacy is 'either threatened or in fact being impaired,' . . . this conclusion mandates a finding of irreparable injury." (quoting *Elrod*, 427 U.S. at 373)).

In addition, as many medical professional organizations, including ACOG, have recently concluded, abortion is "a time-sensitive service for which a delay of several weeks, or in some cases days, may increase the risks [to patients] or potentially make it completely inaccessible."[34] Indeed, for some patients, such a delay will deprive them of any access to abortion. Tex. Health & Safety Code § 171.044 (prohibiting abortions after twenty-two weeks LMP). Forcing patients to forgo abortion care and remain pregnant against their will inflicts serious physical, emotional, and psychological consequences that alone constitute irreparable harm. *See e.g.*, *Elrod*, 427 U.S. at 373–74; *Planned Parenthood of Ariz., Inc. v. Humble*, 753 F.3d 905, 911 (9th Cir. 2014); *Planned Parenthood of Wis., Inc. v. Van Hollen*, 738 F.3d 786, 796 (7th Cir. 2013). Likewise, a delay in obtaining abortion care causes irreparable harm by "result[ing] in the progression of a pregnancy to a stage at which an abortion would be less safe, and eventually illegal." *Planned Parenthood of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*, 896 F.3d 809, 832 (7th Cir. 2018) (alteration in original) (quoting *Van Hollen*, 738 F.3d at 796), *petition for cert. filed*, No. 18-1019 (Feb. 4, 2019). This "disruption or denial of . . . patients' health care cannot be undone after a trial on the merits." *Planned Parenthood of Kan. & Mid-Mo. v. Andersen*, 882 F.3d 1205, 1236 (10th Cir. 2018) (internal quotation marks omitted), *cert. denied sub nom. Andersen v. Planned Parenthood of Kan. & Mid-Mo.*, 139 S. Ct. 638 (Mem.) (2018).

---

[34] ACOG et al., *supra* note 2.

### III. THE BALANCE OF HARMS AND PUBLIC INTEREST SUPPORT INJUNCTIVE RELIEF.

Plaintiffs' requested relief will "essentially continue[] the status quo," tipping the balance of equities toward Plaintiffs and serving the public interest. *Jackson Women's Health Org. v. Currier*, 940 F. Supp. 2d 416, 424 (S.D. Miss. 2013), *aff'd*, 760 F.3d 448 (5th Cir. 2014); *United States v. State of Texas*, 508 F.2d 98, 101 (5th Cir. 1975). In addition, given the duration of the Executive Order and the likelihood that it will be extended, it is likely that many of Plaintiffs' patients will be forced to forgo an abortion entirely and carry an unwanted pregnancy to term. As the Fifth Circuit has made clear, "the grant of an injunction will not disserve the public interest . . . when an injunction is designed to avoid constitutional deprivations." *Jackson Women's Health Org.*, 940 F. Supp. 2d at 424; *see also Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996). Moreover, as set forth more fully above, the benefits of a limited potential reduction in the use of some PPE (and not the most limited PPE) by abortion providers is outweighed by the harm of eliminating abortion access in the midst of a pandemic that increases the risks of continuing an unwanted pregnancy, as well as the risks of traveling to other states in search of time-sensitive medical care. Particularly where Plaintiffs are already taking steps—in line with those required of other medical professionals who continue to provide essential health care—to preserve PPE as much as possible, Dewitt-Dick Decl. ¶ 11; Klier Decl. ¶¶ 13–14; Schutt-Aine Decl. ¶¶ 29–31; Wallace Decl. ¶ 13, injunctive relief here is supported by the balance of harms and the public interest.

### IV. A BOND IS NOT NECESSARY IN THIS CASE.

This Court should waive the Federal Rule of Civil Procedure 65(c) bond requirement. The Fifth Circuit has long held "the [trial] court may elect to require no security at all." *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996); *see also Planned Parenthood of Greater Tex.*

*Family Planning & Preventative Health Servs., Inc. v. Smith*, 236 F. Supp. 39 974, 979 (W.D. Tex. 2017), *overruled on other grounds*, 913 F.3d 551 (5th Cir. 2019); *City of Atlanta v. Metro Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. 1981) (waiving bond requirement where plaintiffs engaged in public-interest litigation, "an area in which the courts have recognized an exception to the Rule 65 security requirement"). This Court should use its discretion to waive the bond requirement here, where the relief sought will result in no monetary loss to Defendant.

## CONCLUSION

For these reasons, this Court should grant Plaintiffs' motion for a temporary restraining order and/or preliminary injunction to enjoin enforcement of the Executive Order and Emergency Rule, as interpreted by Defendants, to prohibit abortions.

Dated: March 25, 2020

Respectfully submitted,

/s/ Patrick J. O'Connell
Patrick J. O'Connell
Texas Bar No. 15179900
Law Offices of Patrick J. O'Connell PLLC
5926 Balcones Dr., Ste. 220
Austin, Texas 78731
(512) 852-5918
pat@pjofca.com

*Attorney for all Plaintiffs*

Julie Murray (*pro hac vice* pending)
Alice Clapman (*pro hac vice* pending)
Richard Muniz (*pro hac vice* pending)
Hannah Swanson (*pro hac vice* pending)
PLANNED PARENTHOOD FEDERATION OF AMERICA
1110 Vermont Ave., NW Ste. 300
Washington, D.C. 20005
(202) 973-4800

julie.murray@ppfa.org
alice.clapman@ppfa.org
richard.muniz@ppfa.org
hannah.swanson@ppfa.org

Jennifer Sandman (*pro hac vice* pending)
PLANNED PARENTHOOD FEDERATION
OF AMERICA
123 William Street
New York, NY 10038
(212) 541-7800
jennifer.sandman@ppfa.org

*Attorneys for Plaintiffs Planned Parenthood Center for Choice, Planned Parenthood of Greater Texas Surgical Health Services, and Planned Parenthood South Texas Surgical Center*

Molly Duane (*pro hac vice* pending)
Rabia Muqaddam (*pro hac vice* pending)
Francesca Cocuzza (*pro hac vice* pending)
CENTER FOR REPRODUCTIVE RIGHTS
199 Water St., 22nd Floor
New York, NY 10038
(917) 637-3631
mduane@reprorights.org
rmuqaddam@reprorights.org
fcocuzza@reprorights.org

*Attorney for Plaintiffs Southwestern Women's Surgery Center* and *Brookside Women's Medical Center PA d/b/a Brookside Women's Health Center and Austin Women's Health Center*

Stephanie Toti
Rupali Sharma (*pro hac vice* pending)
Sneha Shah (*pro hac vice* pending)
LAWYERING PROJECT
25 Broadway, Fl. 9
New York, NY 10004
(646) 490-1083
stoti@lawyeringproject.org
rsharma@lawyeringproject.org
sshah@lawyeringproject.org

*Attorney for Plaintiffs Whole Woman's Health and Whole Woman's Health Alliance*

## CERTIFICATE OF SERVICE

I certify that on this 25th day of March, 2020, I personally emailed a copy of the above document to the following individuals:

Adam.Biggs@oag.texas.gov

Darren.McCarty@oag.texas.gov

Christopher.Hilton@oag.texas.gov

/s/ *Julie Murray*
Julie Murray