IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION



FILED
2020 APR -9 PM 4:33
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

| | |
|---|---|
| PLANNED PARENTHOOD CENTER FOR CHOICE, PLANNED PARENTHOOD OF GREATER TEXAS SURGICAL HEALTH SERVICES, PLANNED PARENTHOOD SOUTH TEXAS SURGICAL CENTER, WHOLE WOMAN'S HEALTH, WHOLE WOMAN'S HEALTH ALLIANCE, SOUTHWESTERN WOMEN'S SURGERY CENTER, BROOKSIDE WOMEN'S MEDICAL CENTER PA D/BA BROOKSIDE WOMEN'S HEALTH CENTER AND AUSTIN'S WOMEN'S HEALTH CENTER, AND ROBIN WALLACE, M.D., M.A.S., PLAINTIFFS, § § § § § § § § § § § § § § § § § § § | |
| V. § § | CAUSE NO. A-20-CV-323-LY |
| GREG ABBOTT, GOVERNOR OF TEXAS, KEN PAXTON, ATTORNEY GENERAL OF TEXAS, PHIL WILSON ACTING EXECUTIVE COMMISSIONER OF THE TEXAS HEALTH AND HUMAN SERVICES COMMISSION, STEPHEN BRINT CARLTON, EXECUTIVE DIRECTOR OF THE TEXAS MEDICAL BOARD, KATHERINE A. THOMAS, EXECUTIVE DIRECTOR OF THE TEXAS BOARD OF NURSING, EACH IN THEIR OFFICIAL CAPACITY, AND MARGARET MOORE, DISTRICT ATTORNEY FOR TRAVIS COUNTY, JOE GONZALES, CRIMINAL DISTRICT ATTORNEY FOR BEXAR COUNTY, JAIME ESPARZA, DISTRICT ATTORNEY FOR EL PASO COUNTY, JOHN CREUZOT, DISTRICT § § § § § § § § § § § § § § § § § § § § § § | |

| | |
|---|---|
| ATTORNEY FOR DALLAS COUNTY, | § |
| SHAREN WILSON, CRIMINAL | § |
| DISTRICT ATTORNEY TARRANT | § |
| COUNTY, RICARDO RODRIGUEZ, JR., | § |
| CRIMINAL DISTRICT ATTORNEY | § |
| FOR HIDALGO COUNTY, BARRY | § |
| JOHNSON, CRIMINAL DISTRICT | § |
| ATTORNEY FOR MCLENNAN | § |
| COUNTY, KIM OGG, CRIMINAL | § |
| DISTRICT ATTORNEY FOR HARRIS | § |
| COUNTY, AND BRIAN MIDDLETON | § |
| CRIMINAL DISTRICT ATTORNEY | § |
| FOR FORT BEND COUNTY, EACH IN | § |
| THEIR OFFICIAL CAPACITY, | § |
| DEFENDANTS. | § |

## ORDER GRANTING PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER

Before the court is Plaintiffs' Second Motion for a Temporary Restraining Order and Memorandum in Support (Dkt. #56). Having considered the motion, the evidence in the record, the legal arguments made by all parties to date, and the opinion, order, and writ of mandamus issued by the United States Court of Appeals for the Fifth Circuit April 7, 2020, *In re Abbott*, No. 20-50264 2020 WL 1685929 (5th Cir. April 7, 2020), the court again considers whether Plaintiffs are entitled to temporary relief limiting the scope of Executive Order GA-09 issued by the governor of Texas on March 22, 2020.

Accompanying Plaintiffs' motion are proposed findings of fact and conclusions of law. The proposed findings and conclusions carefully and painstakingly track the evidence before the court regarding both of Plaintiffs' motions for temporary relief and the applicable law. The court has reviewed and considered these proposed findings and conclusions and determined that they are, in

substantial part, accurate and in concurrence with court's own review of the evidence and the law. The court will, therefore, adopt the bulk of the proposed findings and conclusions as its own.

The court makes the following findings of fact:

1. On March 13, 2020, the United States declared a state of emergency and the State of Texas declared a state of disaster related to the COVID-19 pandemic. *See* Proclamation by the Governor of the State of Texas (Mar. 13, 2020);[1] Proclamation No. 9994, 85 Fed. Reg. 15,337, 2020 WL 1272563 (Mar. 13, 2020).

2. On March 22, 2020, the governor issued an executive order barring "all surgeries and procedures that are not immediately medically necessary to correct a serious medical condition of, or to preserve the life of, a patient who without immediate performance of the surgery or procedure would be at risk for serious adverse medical consequences or death, as determined by the patient's physician." Executive Order GA-09, "Relating to hospital capacity during the COVID-19 disaster" (March 22, 2020) ("Executive Order") at 3.[2] The Executive Order further states that procedures that, "if performed in accordance with the commonly accepted standard of clinical practice, would not deplete the hospital capacity or the personal protective equipment needed to cope with the COVID-19 disaster" are exempt from the order. *Id.* The Executive Order remains in effect until 11:59 PM on April 21, 2020, unless the governor rescinds or modifies it. *Id.*

3. Federal officials and medical professionals expect the pandemic to last well beyond April 21, 2020. Schutt-Aine Decl. ¶ 40. This court likewise expects the pandemic to last beyond April 21.

---

[1] *Available* at https://gov.texas.gov/uploads/files/press/DISASTER_covid19_disaster_proclamation_IMAGE_03-13-2020.pdf.

[2] *Available* at https://gov.texas.gov/uploads/files/press/EO-GA_09_COVID19_hospital_capacity_IMAGE_03-22-2020.pdf.

The current shortage of personal protective equipment ("PPE") is expected to continue for the next three to four months. Sharfstein Decl. ¶ 13.

4. Failure to comply with the Executive Order is a criminal offense punishable by a fine of up to $1,000, confinement in jail for up to 180 days, or both. Executive Order at 3 (citing Tex. Gov't Code § 418.173). Violation of the Executive Order may also give rise to disciplinary action against licensed health-care providers by the Texas Health and Human Services Commission, the Texas Medical Board, and the Texas Board of Nursing. *See* 25 Tex. Admin. Code §§ 139.32(b)(6), 135.24(a)(1)(F); 22 Tex. Admin. Code § 185.17(11); Tex. Occ. Code Ann. §§ 164.051(a)(2)(B), (a)(6); 301.452(b)(3), (B)(10).

5. On March 23, 2020, the Texas Attorney General issued a press release titled "Health Care Professionals and Facilities, Including Abortion Providers, Must Immediately Stop All Medically Unnecessary Surgeries and Procedures to Preserve Resources to Fight Covid-19 Pandemic." The press release states that providing any abortion care (other than for an immediate medical emergency) would violate the Executive Order and warned that "[t]hose who violate the governor's order will be met with the full force of the law."

6. On March 24, 2020, the Texas Medical Board ("Medical Board") adopted an emergency rule ("Emergency Rule") to enforce the Executive Order. Under pre-existing law, the Medical Board can temporarily suspend or restrict a physician's license if the physician's "continuation in practice would constitute a continuing threat to the public welfare." 22 Tex. Admin. Code § 187.57(b). The Emergency Rule expands this basis for discipline to include "performance of a non-urgent elective surgery or procedure" and incorporates the terms of the Executive Order, requiring all licensed health-

care professionals to postpone all surgeries and procedures that are not immediately necessary. 22 Tex. Admin. Code § 187.57 (emergency regulation adopted Mar. 23, 2020).[3]

7. On March 29, 2020, the Medical Board published updated guidance regarding the scheduling of elective surgeries and procedures in light of the Executive Order. Tex. Med. Bd., Updated Texas Medical Board [] Frequently Asked Questions (FAQs) Regarding Non-Urgent Elective Surgeries and Procedures During Texas Disaster Declaration for COVID-19 Pandemic (Mar. 29, 2020) ("Medical Board Guidance").[4] The Medical Board explained that postponing non-urgent elective cases would preserve PPE, ventilator availability, and [intensive-care-unit] beds." It defined "urgent or elective urgent" procedures as those where "there is a risk of patient deterioration or disease progression likely to occur if the procedure is not undertaken or is significantly delayed." The Medical Board noted that "the prohibition does not apply to office-based visits without surgeries or procedures." Further, the Medical Board explained that "[a] 'procedure' does not include physical examinations, non-invasive diagnostic tests, the performing of lab tests, or obtaining specimens to perform laboratory tests."

8. The attorney general's interpretation of the Executive Order, which has been adopted by the State Defendants,[5] creates a credible threat of enforcement against Plaintiffs and their agents for the provision of any abortion. This has had a profound chilling effect on the provision of abortion

---

[3] *Available* at https://tinyurl.com/v4pz99u.

[4] *Available* at http://www.tmb.state.tx.us/idl/59C97062-84FA-BB86-91BF-F9221E4DEF17.

[5] Defendants Greg Abbott, Governor of Texas, Ken Paxton, Attorney General of Texas, Phil Wilson, Acting Executive Commissioner of the Texas Health and Human Services Commission, Stephen Brint Carlton, Executive Director of the Texas Medical Board, Katherine A. Thomas, Executive Director of the Texas Board of Nursing, each in their official capacity, are referred to as "State Defendants."

5

care in Texas. Plaintiffs and their agents have ceased providing nearly all abortion care as a result. Barraza Decl. ¶ 15; Dewitt-Dick Decl. ¶ 8; Ferrigno Decl. ¶¶ 25–28; Hagstrom Miller ¶¶ 26–28; Klier Decl. ¶ 17; Lambrecht Decl. ¶¶ 18–20; Schutt-Aine ¶¶ 32–34; Wallace Decl. ¶ 9.

9. Plaintiffs use two methods of providing an abortion: medication abortion and procedural abortion. Schutt-Aine Decl. ¶ 12.

10. Medication abortion is not a surgery or procedure. It involves the patient ingesting a combination of two pills: mifepristone and misoprostol. Schutt-Aine Decl. ¶ 13. The patient takes the mifepristone in the health center and then, typically 24 to 48 hours later, takes the misoprostol at a location of their choosing, most often at their home, after which they expel the contents of the pregnancy in a manner similar to a miscarriage. Schutt-Aine Decl. ¶ 13. Texas law restricts this method to the first 10 weeks of pregnancy as measured from the first day of a pregnant woman's last menstrual period ("LMP"). Tex. Health & Safety Code § 171.063. Plaintiffs provide medication abortion up to the 10-week limit.

11. Despite sometimes being referred to as "surgical abortion," procedural abortion is not what is commonly understood to be "surgery"; it involves no incision, no need for general anesthesia, and no requirement of a sterile field. Schutt-Aine Decl. ¶ 16. Early in pregnancy, procedural abortions are performed using a technique called aspiration, in which a clinician uses gentle suction from a narrow, flexible tube to empty the contents of the patient's uterus. Schutt-Aine Decl. ¶ 16. Beginning around 15 weeks LMP, the clinician generally must use instruments to complete the procedure, a technique called dilation and evacuation ("D&E"). Later in the second trimester of pregnancy, the clinician may begin cervical dilation the day before the procedure itself, resulting in a two-day procedure. Schutt-Aine Decl. ¶ 16. Plaintiffs provide procedural abortion in both the first and second

trimester. Procedural abortions may not be performed in an abortion clinic after 18 weeks LMP. Tex. Health & Safety Code 171.004. At that point, outpatient procedural abortions may only be performed at an ambulatory surgery center ("ASC"), *id.*, but there are no ASCs that provide abortion care outside of Texas's four largest metropolitan areas, *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2316 (2016).

12. Absent exceptional circumstances, Texas law prohibits abortion care altogether after 22 weeks LMP. *See* Tex. Health & Safety Code § 171.044.

13. Abortion patients rarely require hospitalization. Ferrigno Decl. ¶ 14; Hagstrom Miller Decl. ¶ 17; Schutt-Aine Decl. ¶ 12; *Whole Woman's Health*, 136 S. Ct. at 2311.

14. Although some medication abortions require a follow-up aspiration procedure, the number of those cases is exceedingly small and can generally be handled in an outpatient setting. Levison Decl. ¶ 9; Schutt-Aine Decl. ¶ 12.

15. Providing medication abortion does not require the use of any PPE. Barraza Decl. ¶ 7; Dewitt-Dick Decl. ¶ 19; Ferrigno Decl. ¶ 10; Hagstrom Miller Decl. ¶ 13; Lambrecht Decl. ¶ 12; Klier Decl. ¶ 11; Schutt-Aine Decl. ¶ 25; Wallace Decl. ¶ 12.

16. Texas law requires an in-person consultation between patient and provider, which must include an ultrasound examination, before every abortion. *See* Tex. Health & Safety Code § 171.012(a)(4), (b). For patients who reside within 100 miles of the facility where the abortion will be performed, the consultation must occur at least 24 hours prior to the abortion procedure. *See id.* According to the Medical Board, "non-invasive diagnostic tests" such as ultrasounds are not procedures, and the prohibition contained in the Executive Order "does not apply to office-based visits without surgery or procedures." Medical Board Guidance. In any event, pre-procedure

7

ultrasound examinations require minimal PPE. Use of PPE is not required at all for abdominal ultrasound examinations. Ferrigno Decl. ¶ 11; Hagstrom Miller Decl. ¶ 14; Macones Decl. ¶ 14. For vaginal ultrasound examinations, doctors or ultrasound technicians typically wear only non-sterile gloves that are discarded after each scan. Ferrigno Decl. ¶ 11; Hagstrom Miller Decl. ¶ 14; Macones Decl. ¶ 14. When laboratory testing is required, technicians likewise utilize only non-sterile gloves. Hagstrom Miller Decl. ¶ 14.

17. For procedural abortion, providers may use some or all of the following PPE items, depending on the circumstances: gloves, a surgical mask, disposable protective eyewear, disposable or washable gowns, hair covers, and shoe covers. Barraza Decl. ¶ 7; Dewitt-Dick Decl. ¶ 19; Ferrigno Decl. ¶¶ 10, 12; Hagstrom Miller Decl. ¶¶ 13, 15; Klier Decl. ¶ 11; Lambrecht Decl. ¶ 12; Schutt-Aine Decl. ¶ 25; Wallace Decl. ¶ 12.

18. Following a procedural abortion, the tissue removed from a patient is examined in a pathology laboratory. Ferrigno Decl. ¶ 12; Hagstrom Miller ¶ 15. This task is typically performed by a single staff member who utilizes one washable gown per shift, either one disposable face shield per shift or one set of reusable goggles, one set of disposable shoe covers per shift, one disposable hair cap per shift, and one or more sets of non-sterile gloves. Hagstrom Miller ¶ 15. According to the Medical Board, "the performing of lab tests" is not subject to the Executive Order. Medical Board Guidance; *see also* Tex. Med. Ass'n, TMB Releases Emergency Rules: Non-Urgent Surgeries and Procedures, at 3, 6 (Mar. 29, 2020).[6]

---

[6] *Available* at https://www.texmed.org/uploadedFiles/Current/2016_Public_Health/Infectious_Diseases/Emergency%20rule%20guidance%20-%203.25%20Update.pdf.

19. Abortion providers generally do not use N95 masks. Only one physician associated with Plaintiffs has used an N95 mask since the beginning of the COVID-19 pandemic, and that physician has been reusing the same mask over and over. Barraza Decl. ¶ 8; Ferrigno Decl. ¶ 13; Hagstrom Miller Decl. ¶ 16; Klier Decl. ¶ 6; Lambrecht Decl. ¶ 12; Schutt-Aine Decl. ¶ 27.

20. Pregnant women prevented from accessing abortion will still require medical care. Chang Decl. ¶ 8; Levison Decl. ¶ 8; Macones Decl. ¶ 10. Consistent with recommendations from the American College of Obstetricians and Gynecologists ("ACOG") and other medical authorities for providing obstetrical care during the COVID-19 pandemic, obstetricians are generally having two in-person visits with pregnant patients during the first-trimester and more frequent in-person visits during later trimesters. Chang Decl. ¶ 11; Levison Decl. ¶ 19; Macones Decl. ¶¶ 9–10; Wood Decl. ¶ 11. High-risk patients, including those with diabetes or high blood pressure, must have more frequent in-person visits. Chang Decl. ¶ 10; Levison Decl. ¶ 14; Macones Decl. ¶¶ 7, 10; Wood Decl. ¶¶ 11–12. Urine specimens are generally collected and tested at each in-person visit, and blood is sometimes collected and tested also. Chang Decl. ¶ 12; Levison Decl. ¶ 13; Macones Decl. ¶ 11; Wood Decl. ¶ 11. Additionally, obstetricians are generally performing at least one ultrasound during the first trimester and another one at 20 weeks LMP. Chang Decl. ¶¶ 11–12; Macones Decl. ¶ 12; Wood Decl. ¶ 14. High-risk patients will require more frequent ultrasounds. Macones Decl. ¶ 12; Wood Decl. ¶ 14.

21. Because individuals with ongoing pregnancies require more in-person healthcare, including lab tests and ultrasounds, at each stage of pregnancy than individuals who have previability abortions, delaying access to abortion will not conserve PPE. Levison Decl. ¶¶ 12–14; Macones Decl. ¶ 20; Schutt-Aine Decl. ¶ 26.

22. Individuals with ongoing pregnancies are more likely to seek treatment in a hospital—for a variety of conditions—than individuals who have pre-viability abortions. Therefore, delaying access to abortion will not conserve hospital resources. Levison Decl. ¶¶ 8–11; Macones Decl. ¶ 19; Schutt-Aine Decl. ¶ 26; *Whole Woman's Health*, 136 S. Ct. at 2311.

23. Individuals who are delayed past the legal limit for abortion will have to deliver babies. Delivery generally takes place in a hospital and requires extensive use of PPE. Thus, requiring patients to carry unwanted pregnancies to term will not conserve PPE or hospital resources. Chang Decl. ¶¶ 16–17; Levison Decl. ¶¶ 9, 15–17; Macones Decl. ¶ 18; Schutt-Aine Decl. ¶ 26.

24. Physicians are continuing to provide obstetrical and gynecological procedures comparable to abortion in PPE use or time-sensitivity, based on their professional medical judgment. *See* Chang Decl. ¶ 24; Levison Decl. ¶ 18.

25. The inability to obtain abortion care in Texas as a result of the Executive Order is causing individuals with unwanted pregnancies who have the ability to travel to go to other states to obtain abortions. The record shows that these individuals are traveling by both car and airplane to places as far away as Colorado and Georgia. Doe Decl. ¶¶ 15–22; Johnson Decl. ¶¶ 8–10; Nguyen Decl. ¶ 17; Ward Decl. ¶¶ 12-14. This long-distance travel increases an individual's risk of contracting COVID-19. Bassett Decl. ¶¶ 7–8; Schutt-Aine Decl. ¶ 37; Sharfstein Decl. ¶ 10; Doe Decl. ¶ 18. The record shows that patients traveling to other states for abortion care include patients seeking medication abortion. Doe Decl. ¶¶ 9, 19–22.

26. Plaintiffs have turned away hundreds of patients seeking abortion care, and will turn away hundreds more, absent entry of a temporary restraining order. Barraza Decl. ¶¶ 6, 15; Dewitt-Dick

Decl. ¶ 8; Ferrigno Decl. ¶¶ 26–28; Hagstrom Miller Decl. ¶¶ 27–28; Johnson Decl. ¶ 4; Klier Decl. ¶ 17; Lambrecht Decl. ¶¶ 18–20; Nguyen Decl. ¶ 8; Schutt-Aine Decl. ¶¶ 33–34; Wallace Decl. ¶ 9.

27. There will be significant pent-up need for abortion care when the Executive Order expires. It will take Plaintiffs weeks to resolve the resulting backlog of patients, meaning that a significant number of patients will face additional delays in accessing abortion even after the Executive Order's now month-long duration expires. Ferrigno Decl. ¶ 29; Hagstrom Miller Decl. ¶ 29; Johnson Decl. ¶ 12; Nguyen Decl. ¶ 23.

28. Patients delayed past 10 weeks LMP are no longer eligible for a medication abortion in Texas. *See* Tex. Health & Safety Code § 171.063(a)(2). Patients delayed past 14 to 16 weeks LMP are no longer eligible for an aspiration abortion, and must instead have a D&E, which is a lengthier and more complex procedure. Ferrigno Decl. ¶ 35; Hagstrom Miller Decl. ¶ 34; Lambrecht Decl. ¶ 18; Schutt-Aine Decl. ¶¶ 16, 39. Patients who are delayed past 18 weeks LMP are no longer eligible for an abortion at an abortion clinic in Texas and must obtain care from an ASC. *See* Tex. Health & Safety Code § 171.004. Patients delayed past 22 weeks LMP are no longer eligible to obtain an abortion in Texas at all, absent exceptional circumstances. *See* Tex. Health & Safety Code § 171.044. Declarations in the record demonstrate that some patients have *already* exceeded the gestational age limit to obtain an abortion in Texas while the Executive Order has been in place. Hagstrom Miller Decl. ¶ 27; Johnson Decl. ¶ 10; Nguyen Decl. ¶¶ 7–8, 11; Ward Decl. ¶¶ 12-13, 16.

29. The health risks associated with both pregnancy and abortion increase with gestational age. Dewitt-Dick Decl. ¶ 22; Ferrigno Decl. ¶ 36; Hagstrom Miller Decl. ¶ 35; Schutt-Aine Decl. ¶ 22; Macones Decl. ¶ 8. As ACOG and other well-respected medical professional organizations have observed, specifically in relation to the COVID-19 pandemic, abortion "is an essential component of

11

comprehensive health care" and "a time-sensitive service for which a delay of several weeks, or in some cases days, may increase the risks [to patients] or potentially make it completely inaccessible." ACOG et al., *Joint Statement on Abortion Access During the COVID-19 Outbreak* (Mar. 18, 2020);[7] Schutt-Aine Decl. ¶ 22; Sharfstein Decl. ¶ 8.

30. In addition to increasing health risks, delayed access to abortion imposes financial and emotional costs on people with unwanted pregnancies. The cost of an abortion increases with gestational age. Dewitt-Dick Decl. ¶ 22; Ferrigno Decl. ¶ 36; Hagstrom Miller Decl. ¶ 35; Schutt-Aine Decl. ¶ 39. Women with ongoing pregnancies must cope with the physical symptoms of pregnancy, which often include morning sickness and weight gain; must struggle to conceal their pregnancies from abusive partners or family members; and must deal with the stress and anxiety of not knowing when—or if—they will be able to obtain an abortion. Connor Decl. ¶ 11; Ferrigno Decl. ¶ 34; Hagstrom Miller Decl. ¶ 33; Nguyen Decl. ¶¶ 10–14; Northcutt Decl. ¶¶ 5–6; Ward Decl. ¶¶ 16-17.

31. The court incorporates by reference the findings of fact contained in the court's March 30, 2020 Order Granting Plaintiffs' Request for Temporary Restraining Order. *Planned Parenthood Center for Choice v. Abbott*, 1:20-CV-323-LY (W.D. Tex. Mar. 30, 2020).

The court makes the following conclusions of law:

1. Plaintiffs have standing to bring their claim and a justiciable controversy exists. *See In re Abbott*, No. 20-50264, slip op. at 8 n.17, 2020 WL 1685929 (5th Cir. Apr. 7, 2020). For purposes of sovereign immunity, the governor and attorney general likely have "some connection with the

---

[7] *Available* at https://www.acog.org/news/news-releases/2020/03/joint-statement-on-abortionaccess-during-the-covid-19-outbreak.

the governor, Executive Order at 3, consistent with the governor's statutory authority, Tex. Gov't Code Ann. § 418.012. Similarly, the attorney general has the authority to prosecute Plaintiffs and their agents, at the request of local prosecutors, for alleged violations of the Executive Order, Tex. Gov't Code Ann. § 402.028(a), and he has publicly threatened enforcement against abortion providers in particular.

2. Plaintiffs are entitled to the requested temporary restraining order. In particular, the court concludes that Plaintiffs are likely to succeed on the merits of their substantive due-process claim because, based on the court's findings of fact, it is beyond question that the Executive Order's burdens outweigh the order's benefits as applied to Plaintiffs' provision of (1) medication abortion; and (2) procedural abortion where, in the treating physician's medical judgment, the patient would otherwise be denied access to abortion entirely because (a) the patient's pregnancy would reach 22 weeks LMP by April 21, 2020; or (b) the patient's pregnancy would reach 18 weeks LMP by April 21, 2020, thus requiring abortion care at an ASC and, in the judgment of the treating physician, the patient is unlikely to be able to obtain an abortion at an ASC before the patient's pregnancy reaches the 22-week cutoff. The court therefore concludes that application of the Executive Order to these categories of abortion care violates the standards set forth in both *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), and *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905).

To women in these categories, the Executive Order is an absolute ban on abortion. When a temporary delay reaches 22 weeks LMP, the ban is not temporary, it is absolute. A ban within a limited period becomes a total ban when that period expires. As a minimum, this is an undue burden on a woman's right to a previability abortion.

limited period becomes a total ban when that period expires. As a minimum, this is an undue burden on a woman's right to a previability abortion.

3. Plaintiffs and their patients will suffer irreparable harm in the absence of a temporary restraining order; the balance of equities favors Plaintiffs; and entry of a temporary restraining order serves the public interest. In particular, the record demonstrates that entry of a temporary restraining order to restore abortion access would *serve* the State's interest in public health. *See, e.g.*, Bassett Decl. ¶¶ 6–8; Levison Decl. ¶¶ 20–23; Sharfstein Decl. ¶¶ 9–12.

4. The court incorporates by reference the conclusions of law contained in the court's March 30, 2020 Order Granting Plaintiffs' Request for Temporary Restraining Order. *Planned Parenthood Center of Choice*, No. 1:20-CV-323-LY (W.D. Tex. Mar. 30, 2020).

Therefore,

**IT IS ORDERED** that Plaintiffs' Second Motion for Temporary Restraining Order (Dkt. #56), filed April 8, 2020, is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants and their employees, agents, successors, and all others acting in concert or participating with them are **TEMPORARILY RESTRAINED** from enforcing Executive Order GA-09, "Relating to hospital capacity during the COVID-19 disaster," and the Texas Medical Board's emergency amendment to Title 22 Texas Administrative Code section 187.57, as a categorical ban on all abortions provided by Plaintiffs.

**IT IS FURTHER ORDERED** that Defendants and their employees, agents, successors, and all others acting in concert or participating with them, are **TEMPORARILY RESTRAINED** from enforcing Executive Order GA-09 and the Emergency Rule against Plaintiffs or agents of Plaintiffs who provide medication abortions.

**IT IS FURTHER ORDERED** that Defendants and their employees, agents, successors, and all others acting in concert or participating with them, are **TEMPORARILY RESTRAINED** from enforcing Executive Order GA-09 and the Emergency Rule against Plaintiffs or agents of Plaintiffs who provide a procedural abortion to any patient who, based on the treating physician's medical judgment, would be more than 18 weeks LMP on April 22, 2020, and likely unable to reach an ambulatory surgical center in Texas or to obtain abortion care.

**IT IS FURTHER ORDERED** that Defendants and their employees, agents, successors, and all others acting in concert or participating with them, are **TEMPORARILY RESTRAINED** from enforcing Executive Order GA-09 and the Emergency Rule against Plaintiffs or agents of Plaintiffs who provide a procedural abortion to any patient who, based on the treating physician's medical judgment, would be past the legal limit for an abortion in Texas—22 weeks LMP—on April 22, 2020.

**IT IS FURTHER ORDERED** that this Temporary Restraining Order shall expire on April 19, 2020, at _4:25 am_. This order may be extended for good cause, pursuant to Federal Rule of Civil Procedure 65.

Pursuant to an Agreed Stipulation for Non-Enforcement Pending Final Resolution, Attorneys Fees and Costs filed March 28, 2020 (Clerk's Dkt. #25) this order does not apply to Defendant Brian Middleton, Criminal District Attorney for Fort Bend County.

Plaintiffs shall not be required to post a bond. *See Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996).

This court's April 8, 2020 Order (Dkt. #58) is not affected by this order, and the parties shall continue to comply with the April 8 order.

SIGNED this __9th__ day of April, 2020 at __4:25 p.m.__.

_____
LEE YEAKEL
UNITED STATES DISTRICT JUDGE