**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| PLANNED PARENTHOOD CENTER FOR CHOICE, et al., | § § § | |
| Plaintiffs, | § § | Civil Action No. 1:20-cv-00323-LY |
| v. | § § | |
| GREG ABBOTT, et al., | § § | |
| Defendants. | § § | |

---

**STATE DEFENDANTS'[1] SUPPLEMENTAL RESPONSE TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

---

[1] Defendants Greg Abbott, in his official capacity as Governor of Texas, Ken Paxton, in his official capacity as Attorney General of Texas, Phil Wilson, in his official capacity as Acting Executive Commissioner of the Texas Health and Human Services Commission, Stephen Brint Carlton, in his official capacity as Executive Director of the Texas Medical Board, and Katherine A. Thomas, in her official capacity as the Executive Director of the Texas Board of Nursing (collectively "State Defendants").

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................. 3

STATEMENT OF FACTS ................................................................................................ 3

LEGAL STANDARD ....................................................................................................... 6

ARGUMENT .................................................................................................................... 6

I.   The Court Should Deny the Motion for Preliminary Injunction
     Because Plaintiffs Have No Likelihood of Success on the Merits. ...................... 6

     A.   The Court lacks jurisdiction to grant prospective injunctive relief
          as to the enforcement of GA-09 and the corresponding Emergency
          Rule because GA-09 and the Emergency Rule are no longer in
          effect. ........................................................................................................ 7

     B.   This Court lacks jurisdiction over any GA-15 claims. ................................... 8

          1.   Plaintiffs may not sue the Governor and Attorney General for
               injunctive relief. ................................................................................ 8

          2.   There is no case or controversy regarding GA-15. ............................ 9

          3.   Plaintiffs lack standing to challenge GA-15. ..................................... 9

II.  If the Court considers the merits of Plaintiffs' motion, it should deny
     relief because Plaintiffs fail to show a constitutional violation "beyond
     question." ................................................................................................................ 13

     A.   Plaintiffs cannot show any burden on abortion rights because GA-
          15 does not require certifying facilities to postpone procedures. ................. 13

     B.   Following the mandate rule, as the Court must, provides no
          means for Plaintiffs to obtain relief because their evidence is still
          insufficient. ............................................................................................... 14

          1.   Plaintiffs lack evidence showing how much PPE should be used
               and is being used for abortion procedures during the COVID-19
               pandemic. ......................................................................................... 15

          2.   Plaintiffs lack evidence showing how an increase in travel for
               abortion patients compares to the decrease in travel for many
               patients across the state. .................................................................. 17

          3.   Plaintiffs lack evidence showing how often medication abortions
               require follow-up surgical aspiration, not just hospitalization. ........... 17

          4.   Plaintiffs lack evidence of specific patients who are approaching
               18 weeks LMP and would suffer a specific burden on abortion
               access. .............................................................................................. 18

5.   Plaintiffs lack evidence of specific patients who would be over 22 weeks LMP before expiration of GA-15 and would suffer a complete deprivation of abortion access. ................................................ 19

III. Plaintiffs Cannot Satisfy The Remaining Factors For Preliminary Injunctive Relief. ........................................................................................ 20

CONCLUSION ................................................................................................ 21

CERTIFICATE OF FILING AND SERVICE ............................................. 22

## INTRODUCTION

Plaintiffs may no longer obtain injunctive relief as to GA-09, as that executive order and the corresponding TMB emergency rule have been supplanted as of last night, April 21, 2020. The new executive order addressing elective surgeries and procedures, GA-15, went into effect this morning, April 22, 2020. Should Plaintiffs challenge GA-15 and continue to seek injunctive relief, as this Court stated it would allow them to do, there is no legal basis for relief for multiple reasons. First, this Court lacks jurisdiction to grant such relief because there is no case or controversy remaining, as Plaintiffs have already certified they are in compliance with an exception to GA-15, one that was not included in GA-09. Second, because Plaintiffs admit that the exemption now applies to them based on their certification, Plaintiffs are not being injured and can show no burden on the rights of their patients. Third, even if GA-15 was identical to GA-09—and it clearly is not—the Fifth Circuit has already held that Plaintiffs lack evidence to show they are entitled to injunctive relief. Plaintiffs' new evidence is either cumulative to evidence already before the Court or irrelevant. This Court should deny the motion for preliminary injunction.

## STATEMENT OF FACTS

The spread of COVID-19, the disease caused by the novel coronavirus known as SARS-CoV-2, is a global pandemic. Thompson Decl. ¶ 3 (DX-8). Since the last time State Defendants filed a brief in this Court, the number of COVID-19 cases in Texas has grown from around 2,500 cases to nearly 22,000. DX-3.[2]

Texas law makes the Governor "responsible for meeting the dangers to the state

---

[2] *See also* Tex. Dep't of State Health Servs., *COVID-19 Texas Case Counts*, https://txdshs.maps.arcgis.com/apps/opsdashboard/index.html#/ed483ecd702b4298 ab01e8b9cafc8b83 (accessed Apr. 22, 2020).

and people presented by disasters." Tex. Gov't Code § 418.011. The Governor declared a statewide disaster on March 13, 2020 pursuant to Texas Government Code section 418.014. DX-1. The Government Code grants the Governor broad authority once he has declared a disaster. *Id.* §§ 418.016, 418.017(c). These powers are exercised by the Governor through the issuance of executive orders, proclamations, and regulations, which the Governor also has the power to amend or rescind. *Id.* at § 418.012. Executive orders, proclamations, and regulations "have the force and effect of law." *Id.* On March 19, 2020, Dr. John Hellerstedt, Commissioner of the Department of State Health Services, declared a public health disaster under Texas Health and Safety Code section 81.082 because the virus "poses a high risk of death to a large number of people and creates a substantial risk of public exposure because of the disease's method of transmission and evidence that there is community spread in Texas." DX-2.

On March 22, 2020, the Governor issued an executive order designed to increase the capacity of Texas's healthcare system to absorb a surge of COVID-19 patients and address the severe shortage of PPE. DX-4 (GA-09). Shortly thereafter, the Texas Medical Board (TMB) issued an Emergency Rule, 22 Tex. Admin. Code § 187.55, providing a mechanism for enforcement. GA-09 applied to all licensed health care professionals and all licensed health care facilities in the State. It required that they "postpone all surgeries and procedures that are not immediately necessary to correct a serious medical condition of, or to preserve the life of, a patient who without immediate performance of the surgery or procedure would be at risk for serious adverse medical consequences or death, as determined by the patient's physician." *Id.* It did not apply

to "any procedure that, if performed in accordance with the commonly accepted standard of clinical practice, would not deplete the hospital capacity or the personal protective equipment needed to cope with the COVID-19 disaster." *Id.* GA-09 expired on its own terms on April 21, 2020. *Id.*

At 11:59pm on April 21, 2020, a new Executive Order pertaining to elective surgeries and procedures took the place of GA-09. GA-15 also applies to all licensed health care professionals and all licensed health care facilities in the State. DX-11. It requires that they "postpone all surgeries and procedures that are not medically necessary to diagnose or correct a serious medical condition of, or to preserve the life of, a patient who without timely performance of the surgery or procedure would be at risk for serious adverse medical consequences or death, as determined by the patient's physician." *Id.* It also does not apply to "any procedure that, if performed in accordance with the commonly accepted standard of clinical practice, would not deplete the hospital capacity or the personal protective equipment needed to cope with the COVID-19 disaster." *Id.*

Significantly, GA-15 provides an additional exception for "any surgery or procedure performed in a licensed health care facility that has certified in writing to the Texas Health and Human Services Commission both: (1) that it will reserve at least 25% of its hospital capacity for treatment of COVID-19 patients, accounting for the range of clinical severity of COVID-19 patients; and (2) that it will not request any personal protective equipment from any public source, whether federal, state, or local, for the duration of the COVID-19 disaster." *Id.* GA-15 expires on May 8, 2020. *Id.*

Under the text of GA-15, providers are responsible for certifying that they meet the conditions of the new exception. *Id.* Both HHSC and the Texas Medical Board

5

(TMB) agree that HHSC's role is limited to receiving certifications from facilities and acknowledging receipt. *Id.*; DX-13, DX-14. TMB issued an emergency rule, which went into effect at midnight on April 22, 2020 along with GA-15, and replaces 22 Tex. Admin. Code § 187.55, the previous Emergency Rule that corresponded with GA-09. DX-12. The New Emergency Rule tracks the language of GA-15, including the new exception, and provides a mechanism for enforcement.

Every Plaintiff clinic has certified to HHSC that it meets the requirements of the new exception in GA-15. DX-15.

## LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that should only issue if the movant shows: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will not disserve the public interest." *Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008). At the preliminary injunction stage, Plaintiffs "bear the burden to prove, by a 'clear showing' that they are entitled to relief." *In re Abbott,* No. 20-50264, 2020 WL 1685929, at *12 (5th Cir. Apr. 7, 2020) (*Abbott I*) (citation omitted).

## ARGUMENT

### I.   The Court Should Deny the Motion for Preliminary Injunction Because Plaintiffs Have No Likelihood of Success on the Merits.

Plaintiffs cannot show an entitlement to injunctive relief as to GA-09 because it is no longer effective. DX-4. To the extent Plaintiffs may yet raise challenges to GA-15 and the New Emergency Rule (and they have not done so) and to the extent the

Court entertains those challenges under this motion,[3] the Court lacks jurisdiction because Plaintiffs lack standing to obtain any relief and there is no case or controversy between the parties.

"A district court's obligation to consider a challenge to its jurisdiction is non-discretionary." *In re Gee*, 941 F.3d 153, 159 (5th Cir. 2019). "When the defendant 'challenge[s] the jurisdiction of the district court in an appropriate manner,'" that court has a "duty of making further inquiry as to its own jurisdiction.' *Id*. (quoting *Opelika Nursing Home, Inc. v. Richardson*, 448 F.2d 658, 666 (5th Cir. 1971)).

### A. The Court lacks jurisdiction to grant prospective injunctive relief as to the enforcement of GA-09 and the corresponding Emergency Rule because GA-09 and the Emergency Rule are no longer in effect.

The "frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Plaintiffs cannot show that they will "likely" suffer irreparable injury with respect to GA-09 because it is no longer effective and no longer being enforced. DX-4. The Fifth Circuit recently confirmed that this Court lacks jurisdiction to order prospective relief against officials who do not enforce an executive order. *In re Abbott*, No. 20-50296, 2020 WL 1911216, at *6-7 (5th Cir. Apr. 20, 2020) (*Abbott II*). No one is enforcing GA-09 or the Emergency Rule because neither remains operative. *In re Abbott* thus forecloses any relief as to GA-09 and the Emergency Rule.

---

[3] The Court indicated at the telephone conference of April 20, 2020 that despite GA-15 not being part of the current lawsuit, the Court would entertain a challenge to GA-15 as part of the already-pending motion for preliminary injunction.

**B.   This Court lacks jurisdiction over any GA-15 claims.**

Plaintiffs state that they include GA-15 in their request for preliminary injunctive relief (despite it not being included in the operative complaint) "[t]o the extent Defendants intend to interpret and enforce the rule consistent with their interpretation of GA-09 and inconsistent with GA-15's new exception." Suppl. Mem. Supp. Mot. 1 n.1. As explained above, GA-15 and GA-09 are not the same, and GA-15 contains an exception GA-09 lacked and that Plaintiffs certify they meet, so it is unclear how they would be applied the same way. Thus, according to their own motion, Plaintiffs have no basis for preliminary injunctive relief against GA-15. But even if the Court entertained a claim for relief related to GA-15, the Court lacks jurisdiction over any putative claims related to GA-15 because there is no case or controversy and Plaintiffs lack standing.

**1.   Plaintiffs may not sue the Governor and Attorney General for injunctive relief.**

As the Fifth Circuit already held, "the Governor lacks the required enforcement connection to GA-09 and may not be sued for injunctive relief under the Eleventh Amendment." *Abbott II*, 2020 WL 1911216, at *6. The Fifth Circuit also settled the question as to the Attorney General: "The Attorney General also lacks the required enforcement connection to GA-09 and may not be sued for injunctive relief under the Eleventh Amendment." *Id.* Like GA-09, GA-15 provides no enforcement connection to these state officials. DX-11. The Governor and the Attorney General therefore are not proper parties to any suit challenging GA-15, and the Court lacks jurisdiction to enter injunctive relief against them. *Abbott II*, 2020 WL 1911216, at *7.

### 2.  There is no case or controversy regarding GA-15.

"The exercise of judicial power under Article III of the United States Constitution depends upon the existence of a case or controversy. Without an actual case or controversy, a federal court has no jurisdiction." *John Doe #1 v. Veneman*, 380 F.3d 807, 814 (5th Cir. 2004). "'There must be a case or controversy through all stages of a case'—not just when a suit comes *into* existence but *throughout* its existence." *Yarls v. Bunton*, 905 F.3d 905, 909 (5th Cir. 2018) (quoting *K.P. v. LeBlanc*, 729 F.3d 427, 438 (5th Cir. 2013)). For about two weeks, GA-15 delays surgeries or procedures that are not medically necessary, but provides an exception for procedures performed in facilities that make the specified certification to HHSC. DX-11. Plaintiffs state that they can truthfully certify that they qualify for the exception. Suppl. Mem. Supp. for Prelim. Inj. at 1. Plaintiffs in fact *have* made those certifications and received acknowledgment from HHSC. DX-15. Having done so, Plaintiffs admit the exemption applies to them. There is no controversy between the parties, and the Court therefore lacks jurisdiction.[4]

### 3.  Plaintiffs lack standing to challenge GA-15.

Closely related to the above is Plaintiffs' lack of standing to challenge GA-15.

---

[4] As the Fifth Circuit just cautioned, were the Court to find that the plain text of GA-15 is ambiguous or disagree with state officials' interpretation of it, "any relief ordering a state official to comply with state law would be barred by the *Pennhurst* doctrine. *Abbott II*, 2020 WL 1911216, at *15 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Moreover, the Supreme Court has long held that district courts must abstain from deciding cases where a state-law question—like the proper interpretation of state law—would "avoid or significantly modify" the federal analysis. *Lake Carriers Ass'n v. MacMullan*, 406 U.S. 498, 512 (1972); *see R.R. Comm'n v. Pullman Co.*, 312 U.S. 496, 500 (1941).

"'[F]ederal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'" *In re Gee*, 941 F.3d at 159 (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (citation omitted)). Plaintiffs cannot show they are being injured by any State Defendant and lack standing to pursue relief from GA-15 or the New Emergency Rule. This Court therefore lacks jurisdiction over any future challenge by Plaintiffs as to those provisions.

a.    A plaintiff seeking relief in federal court must first plausibly allege "an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotation marks omitted). The "threatened injury must be certainly impending to constitute injury in fact, and . . . allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (quotations and brackets omitted). "By ensuring a future injury is not 'too speculative,' the imminence requirement [of article III standing] 'reduce[s] the possibility of deciding a case in which no injury would have occurred at all.'" *Ctr. for Biological Diversity v. United States Envt'l Prot. Agency*, 937 F.3d 533, 537 (5th Cir. 2019) (quoting *Lujan*, 504 U.S. at 564 n.2).

Because GA-15 is not addressed in the operative complaint, there are no allegations of injury. 2d Am. Compl. 2-27. But assuming Plaintiffs will make allegations regarding GA-15 like those they made for GA-09, there is no injury in fact traceable to the State Defendants. All the Plaintiff abortion clinics have submitted certifications, and HHSC has acknowledged receipt of those certifications. DX-15. According to the text of GA-15 and HHSC, that is the extent of HHSC's role under GA-15. DX-

11; *see also* DX-13, DX-14. TMB will enforce GA-15 only if it receives a complaint of non-compliance and verifies the allegation through investigation. DX-14.[5] Because Plaintiffs have now certified to HHSC that they qualify for the exemption, neither HHSC nor TMB will take any unilateral enforcement action against them.

If Plaintiffs choose not to perform abortions despite making the certification to qualify for the exemption, that does not give them standing. "A plaintiff's decision to forego action based on speculation is not an injury sufficient to confer standing." *Zimmerman v. City of Austin*, 881 F.3d 378, 389-90 (5th Cir. 2018); *see also Ctr. for Biological Diversity*, 937 F.3d at 540-42. "Parties 'cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.'" *Glass v. Paxton*, 900 F.3d 233, 239 (5th Cir. 2018) (quoting *Clapper*, 568 U.S. at 416).

b.    Next, the plaintiff must show it is "likely," as opposed to merely "speculative," that the claimed injury will be "redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)). Plaintiffs' GA-15 claims against the State Defendants do not meet that standard. Assuming Plaintiffs would seek an order enjoining State Defendants from enforcing GA-15 and the New Emergency Rule as applied to abortions like they did with GA-09, Plaintiffs cannot show any likelihood of enforcement if they have certified that

---

[5] Plaintiffs have never articulated what their theory of injury is with respect to the Texas Nursing Board. TNB, unlike TMB, has not passed any emergency rules providing for enforcement for non-compliance with either GA-09 or GA-15, and the disciplinary code section cited by Plaintiffs in the Complaint does not mention anything about compliance with Executive Orders. *See* 2d Am. Compl. ¶ 28; Tex. Occ. Code. § 301.452. In light of the absence of any allegations, let alone evidence, this Court cannot enter relief against TNB.

they meet GA-15's exemption. Standing to seek prospective relief against the enforcement of state law requires "a credible threat of prosecution." *Cruz v. Abbott*, 849 F.3d 594, 602 (5th Cir. 2017). Any prosecution based on the Executive Order would be pursued by the District Attorney Defendants, and there is no allegation that these Defendants are at all likely to pursue prosecution, let alone under GA-15. *See* 2d Am. Compl. 2-27. Before any Plaintiff could suffer injury, the relevant District Attorney would have to find that Plaintiffs are in violation of GA-15 despite their certifications and decide to pursue prosecution. And as to TMB, it will issue sanctions for violation of GA-15 only if it first (1) receives a complaint of non-compliance, (2) the complaint contains sufficient evidence to prompt an investigation; and (3) verifies the allegation through investigation. DX-14. Injury that relies on such an "attenuated chain of inferences" does not suffice for standing. *Clapper*, 568 U.S. at 414 n.5.

A mere fear of prosecution absent any indication it will occur is not enough to establish standing. Hypothetical injuries are insufficient to establish Article III jurisdiction. *Moore v. Bryant*, 853 F.3d 245, 248 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 468 (2017). The Fifth Circuit, in upholding this Court's standing conclusion in *Glass*, held that "[b]y adjudicating claims for which the alleged harm is not certainly impending, federal courts risk disregarding their constitutional mandate to limit their jurisdiction to actual cases and controversies and thereby avoid the issuance of advisory opinions." 900 F.3d at 242. GA-15 causes no harm to Plaintiffs, nor is any "certainly impending." Plaintiffs therefore lack standing, and this Court lacks jurisdiction to enter injunctive relief.

## II. If the Court considers the merits of Plaintiffs' motion, it should deny relief because Plaintiffs fail to show a constitutional violation "beyond question."

*Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 35 (1905), "prohibits courts from 'usurp[ing] the state's authority to craft measures responsive to a public health emergency.'" *Abbott II,* 2020 WL 1911216, at *12 (citing *Abbott I*, 2020 WL 1685929, at *12). "Courts have no authority to ask whether a 'particular method [is]—perhaps, or possibly—not the best.'" *Id.* (quoting *Jacobson*, 197 U.S. at 35). "Instead, courts may ask only whether the state has acted in an 'arbitrary, unreasonable manner.'" *Id.* (quoting *Jacobson,* 197 U.S. at 28). In the context presented here, where Plaintiffs claim a burden on the right to abortion, "a court should 'ask[ ] whether GA-09 imposes burdens on abortion that 'beyond question' exceed its benefits in combating the epidemic Texas now faces." *Id.* (quoting *Abbott I,* 2020 WL 1685929, at *11 (quoting *Jacobson*, 197 U.S. at 31)). The Fifth Circuit emphasized that this "delicate inquiry" requires 'careful parsing of the evidence.'" *Id.* at *13 (quoting *Abbott I*, 2020 WL 1685929 at *11). Evaluating the evidence under the prescribed standard shows that Plaintiffs are not entitled to injunctive relief.

### A. Plaintiffs cannot show any burden on abortion rights because GA-15 does not require certifying facilities to postpone procedures.

As stated above, on its face, GA-15 does not require facilities to postpone procedures if the facility has certified it meets the exception. DX-11. Thus, all of Plaintiffs' arguments about burdens caused by GA-09's postponements are irrelevant. Plaintiffs cannot show any entitlement to injunctive relief because no patients' rights are being burdened.

**B. Following the mandate rule, as the Court must, provides no means for Plaintiffs to obtain relief because their evidence is still insufficient.**

Even if GA-15 were identical to GA-09—it's not—and this Court had jurisdiction to grant relief—it doesn't—Plaintiffs' evidence is insufficient to show a likelihood of success on the merits, as the Fifth Circuit has already determined twice. This Court must follow the mandate rule, "a particular manifestation of the law-of-the-case doctrine barring reexamination of issues already decided by an appellate court." *Abbott II*, 2020 WL 1911216, at *7 (citing *United States v. Smith*, 814 F.3d 268, 273 (5th Cir. 2016)). "Under the mandate rule, a district court 'must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court.'" *Id.* (citing *United States v. Lee*, 358 F.3d 315, 321 (5th Cir. 2004) (quoting *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002)).

The Fifth Circuit has twice found that the record before it "failed to support the conclusion that GA-09 violates *Jacobson* [*v. Commonwealth of Massachusetts*] and [*Planned Parenthood of Southeastern Pennsylvania v.*] *Casey*." *Id.* at *9. Thus, in evaluating Plaintiffs' claim for relief, the Court should look beyond evidence "already found wanting." *Id.* Instead, the Court must consider whether Plaintiffs' new evidence—Exhibits 21-40—addresses the deficiencies identified by the Fifth Circuit. If it does not, the mandate rule bars relief.

In its most recent opinion, the Fifth Circuit identified examples of areas where additional evidence might help Plaintiffs meet their heavy burden to show a constitutional violation "beyond question" under *Jacobson*:

    1. Evidence showing how much PPE should be used and/or is being used for abortion procedures *during the current pandemic*, not under normal circumstances. *Abbott II*, 2020 WL 1911216, at *10.

2. Evidence showing how any increase in travel for some patients compares to the amount of travel GA-09 has reduced. *Id.* at *13.

3. Evidence showing how often medication abortions require follow-up surgical aspiration, not just hospitalization. *Id.* at *14.

4. Evidence of "discrete and well-defined instances" of a woman over 18 weeks LMP who would suffer a specific burden on abortion access to support an as-applied challenge. *Id.* at *16.

5. Direct, not "secondhand, and thus weak," evidence of specific patients who will be 22 weeks LMP before expiration of GA-09 and for whom GA-09 operates as a permanent ban. *Id.* at *17.[6]

Plaintiffs' evidence is still deficient. At best, it is merely cumulative of the evidence already rejected twice by the Fifth Circuit. At worst, it is irrelevant given the Fifth Circuit's legal conclusions. Each of the five categories will be addressed in turn below.

### 1. Plaintiffs lack evidence showing how much PPE should be used and is being used for abortion procedures during the COVID-19 pandemic.

To start, GA-15 does not require any facility that certifies compliance with the exception to postpone any procedure. DX-11. But even if it somehow did despite GA-15's plain text, Plaintiffs have failed to proffer evidence justifying injunctive relief. In the second mandamus opinion, the Fifth Circuit held that the record contained insuf-

---

[6] While the Fifth Circuit concluded that this was the only part of the second TRO that it could not conclude was a "clear abuse of discretion" "at this early stage," it also stated that "given the weak evidence, we are not fully satisfied with this [Court's ] cursory conclusion" as to women exceeding the legal limit." *Id.*

ficient evidence to support "the conclusion that merely postponing medication abortions 'beyond question' violates the right to abortion." *Id.* at *10. As part of that conclusion, the Court observed that there was no evidence showing how abortion providers are using PPE during the pandemic: "Scour the twenty declarations [Plaintiffs] submitted to support their claim. Does any testify that *during the current pandemic*, abortion providers are not wearing masks? No. Nor would one expect such a statement when everyday life now presents … grocery store cashiers, gas station attendants, and retail clerks wearing them every day." *Id.* (footnote omitted).[7] "Scour" the new declarations, and there is again a lack of evidence on this point, and only more of the same—PPE usage under normal circumstances. *See* Roe Decl. ¶ 9[8] (opinion on general PPE usage not specific to pandemic); ¶ 14 (seeing pregnant patients during pandemic requires extra PPE to prevent transmission of virus); Schutt-Aine 2d Decl. ¶¶ 15, 22 (PPE use for pregnant patients during pandemic); ¶¶ 38, 40, 43 (general assertions on PPE usage not specific to pandemic); *see also generally* Pls.' Exs. 23-39. Plaintiffs have once again failed to support the conclusion that merely postponing medication abortions—or any type of abortion—"'beyond question' violates the right to abortion." *Abbott II*, 2020 WL 1911216, at *10.

---

[7] At least one plaintiff—Planned Parenthood of Greater Texas—is requiring all patients to wear a "face covering" because of COVID-19. https://perma.cc/4SKV-Y7KD.

[8] State Defendants vehemently object to Plaintiffs' use of declarations from anonymous purported experts and anonymous non-essential fact witnesses, especially given that these witnesses are not even identified to counsel and the parties will have no opportunity to cross-examine these supposed witnesses. State Defendants soon intend to file a motion for reconsideration of the Court's order granting the protective order and allowing these witnesses to not identify themselves, since they were not given time to respond under the Local Rules of this Court.

####    2.   Plaintiffs lack evidence showing how an increase in travel for abortion patients compares to the decrease in travel for many patients across the state.

The Fifth Circuit held that this Court "usurp[ed] state authority to create public-health measures" when it previously concluded that GA-09 did not serve the public interest. The Court had relied on hearsay evidence previously submitted by Plaintiffs to show that some women were choosing to travel out of state to receive an abortion rather than wait until GA-09 expired. *Id.* at *13. Again, the plain text of GA-15 does not require any facility that certifies compliance with the exception to postpone procedures, so it follows that any continued traveling out of state for procedures is not attributable to GA-15. DX-11. But even if it did, the Fifth Circuit held that "evidence that some women travel to other states to receive an abortion does not demonstrate that GA-09 increases the risk of COVID-19 transmission. Such a claim would require comparing the amount of travel that GA-09 has increased with the amount of travel it has reduced." *Id.* It pointed out Plaintiffs' admissions that women normally travel all over Texas to receive abortions. *Id.* In other words, it is unclear that some women choosing to travel out of state creates more risk of the spread of COVID-19 than is being reduced by delaying abortion procedures. Plaintiffs submitted no evidence on this point. *See generally* Pls.' Exs. 21-40.

####    3.   Plaintiffs lack evidence showing how often medication abortions require follow-up surgical aspiration, not just hospitalization.

The Fifth Circuit determined that the Court's previous conclusion that the number of medication abortions that require a follow-up surgical procedure "is exceedingly small" was unsupported by the record. *Abbott II*, 2020 WL 1911216, at *14. The Fifth Circuit explained that Plaintiffs' evidence did not support that statement, as it referred only to hospitalization, and that State Defendants submitted evidence showing

the opposite was true. *Id.* Plaintiffs have now submitted a second declaration from Dr. Schutt-Aine, which admits that the FDA states that the surgical aspiration follow-up rate is 2.6%. Schutt-Aine 2d Decl. ¶ 45. First, that number is not "exceedingly small." *Abbott II*, 2020 WL 1911216, at *14. According to 2017 figures, that would be 443 surgical follow-ups per year, or more than eight per week. DX-5. But it also fails to clarify much according to Plaintiffs' own arguments. Plaintiffs argued that State Defendants' evidence— an ACOG practice bulletin reaffirmed in 2016[9]--was "outdated." *Id.* But Dr. Schutt-Aine's evidence is also from 2016. *See* Schutt-Aine 2d Decl. ¶ 45 n. 22. None of Plaintiffs' other evidence addresses this. *See generally* Exs. 21-36, 38-40.

### 4. Plaintiffs lack evidence of specific patients who are approaching 18 weeks LMP and would suffer a specific burden on abortion access.

The Fifth Circuit held that delaying an abortion procedure for a woman who was approaching 18 weeks LMP is not an absolute ban on abortion and surmised that this Court instead "had in mind an as-applied challenge to GA-09 on behalf of a woman facing this particular combination of circumstances." *Id.* at 16. But the Fifth Circuit held that such relief "would require evidence of 'discrete and well-defined instances' sufficient to support such a challenge . . . but the district court cited none and we can find none in the record." *Id.* at *16 (citation omitted). Nor is there any now. Like the

---

[9] *See* TRO Resp. 18 n. 41 (citing Am. Coll. of Obstetricians and Gynecologists, *Medical Management of First-Trimester Abortion, Practice Bulletin 143* (2016), https://www.acog.org/clinical/clinicalguidance/practice-bulletin/articles/2014/03/medical-management-of-first-trimesterabortion); Reply in Support of Petition for Writ of Mandamus 5 n. 6, *Abbott II*, 2020 WL 1911216 (5th Cir. filed Apr. 15, 2020).

declaration of the abortion-hotline coordinator Rashae Ward (Ex. 21), which was re-
jected by the Fifth Circuit as insufficient, *id.*, Plaintiffs' new declarations only provide
more of the same non-specific evidence. *Compare* Ward Decl. ¶¶ 13, 16 *with* Bennett
Decl. ¶ 24, Hagstrom-Miller 2d Decl. ¶ 5, Sanford Decl. ¶ 17, Moe Decl. ¶¶ 18-19.

>    **5.  Plaintiffs lack evidence of specific patients who would be over
>    22 weeks LMP before expiration of GA-15 and would suffer a
>    complete deprivation of abortion access.**

The Fifth Circuit found that this Court's TRO as to women who would exceed the
gestational limit for abortion in Texas before GA-09 expired was not "so patently er-
roneous that mandamus is appropriate," but expressed serious reservations about the
sufficiency of Plaintiffs' evidence past the TRO stage. *Abbott II*, 2020 WL 1911216, at
*17. In particular, the Court pointed out that the only evidence was "secondhand"
and therefore "weak." *Id.* That is still true of Plaintiffs' new evidence. *See* Moe Decl.
¶19; Nguyen 2d Decl. ¶ 5. Further, the Fifth Circuit pointed out that it is unknown
whether "GA-09's exception for 'patient[s] who without immediate performance of the
surgery or procedure would be at risk for serious adverse medical consequences ... as
determined by the patient's physician,'" already covers women in these circum-
stances." *Id.* (quoting *Abbott I*, 2020 WL 1685929, at *3). Plaintiffs have submitted
no evidence on that point, and to the extent that question is a matter of interpretation
of state law, the proper forum for answering that question is state court. *See Reetz v.
Bozanich*, 397 U.S. 82, 86 (1970); *Pullman*, 312 U.S. at 511.

* * *

Plaintiffs have failed to meet the exacting burden required to merit the extraor-
dinary remedy of a preliminary injunction. Plaintiffs cannot show any burden be-
cause the text of GA-15 does not require facilities that have certified compliance with

19

the exception to postpone procedures. Even if it did, Plaintiffs' evidence is still insufficient to warrant injunctive relief according to the Fifth Circuit because it fails to establish that the right to abortion has been violated "beyond question."

## III. Plaintiffs Cannot Satisfy The Remaining Factors For Preliminary Injunctive Relief.

Plaintiffs cannot show irreparable harm because they cannot show that they are being prohibited from doing anything by GA-15. *See Ridgely*, 512 F.3d at 734; Parts I.B.2, II.A *supra*. Conversely, the State will be harmed if the Court exempts Plaintiffs from compliance with a law that every other medical provider must follow, so the balance of equities weighs decisively in the State's favor. *See Ridgely*, 512 F.3d at 734. Moreover, COVID-19 is a serious and imminent threat to public health. Abraham Decl. ¶ 3 (DX-6). GA-15 is a necessary but temporary measure to protect the public. As the Fifth Circuit held, when it comes to determining what serves the public interest, "a court must assume that the public health experts at the Texas Department of State Health Services—not to mention the CDC, the U.S. Surgeon General, and the Centers for Medicare and Medicaid Services—weighed these difficult trade-offs between medical care and public health. Federal judges get no vote on the matter." *Abbott II*, 2020 WL 1911216, at *13 (citing *Jacobson*, 197 U.S. at 35).

## CONCLUSION

For the foregoing reasons, the State Defendants respectfully request that the Court deny the motion for a preliminary injunction.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief, General Litigation Division

/s/ Andrew B. Stephens
ANDREW B. STEPHENS
Texas Bar No. 24079396
BENJAMIN S. WALTON
Texas Bar No. 24075241
Assistant Attorneys General
General Litigation Division

HEATHER GEBELIN HACKER
Assistant Solicitor General
Texas Bar No. 24103325

Office of the Attorney General
300 West 15th Street
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2120 (phone)
(512) 320-0667 (fax)

Attorneys for State Defendants

## CERTIFICATE OF FILING AND SERVICE

I certify that on April 22, 2020, this document was served through the Court's CM/ECF Document Filing System or through electronic mail, upon the following counsel of record:

Patrick J. O'Connell
Law Offices of Patrick J. O'Connell PLLC
5926 Balcones Dr., Ste. 220
Austin, TX 78731
(512) 852-5918
pat@pjofca.com

Molly Duane
Rabia Muqaddam
Francesca Cocuzza
Center for Reproductive Rights
199 Water St. 22nd Floor
New York, NY 10038
(917) 637-3631
mduane@reprorights.org
rmuqaddam@reprorights.org
fcocuzza@reprorights.org

Julie Murray
Alice Clapman
Richard Muniz
Hannah Swanson
Planned Parenthood Federation of America
1110 Vermont Ave., NW Ste. 300
Washington, D.C. 20005
(202) 973-4800
julie.murray@ppfa.org
alice.clapman@ppfa.org
richard.muniz@ppfa.org
hanna.swanson@ppfa.org

Stephanie Toti
Rupali Sharma
Sneha Shah
Lawyering Project
25 Broadway, Fl. 9
New York, NY 10004
(646) 490-1083
stoti@lawyeringproject.org
rsharma@lawyeringproject.org
sshah@lawyeringproject.org

Jennifer Sandman
Planned Parenthood Federation of America
123 William Street
New York, NY 10038
(212) 541-7800
jennifer.sandman@ppfa.org

Justin C. Pfeiffer
Assistant Fort Bend County Attorney
301 Jackson Street (Mail)
Richmond, Texas 77469
(281) 341-4555
Justin.Pfeiffer@fortbendcountytx.gov

Brigitte Adrienne Amiri
American Civil Liberties Union
125 Broad Street
New York, NY 10004
(212) 549-2633
bamiri@aclu.org

John Butrus
Assistant District Attorney for
Dallas County
133 N. Riverfront Blvd., L.B. 19
Dallas, TX 75207
(214) 653-3691
John.buterus@dallascounty.org

Elizabeth Murrill
Solicitor General
Joseph Scott S. John
Louisiana Department of Justice
1885 N. Third Street
Baton Rouge, LA 70804
(225) 456-7544 / (225) 485-2458
emurrill@ag.louisiana.gov
stjohnj@ag.louisiana.gov

Adam Arthur Biggs
Special Litigation Counsel
P.O. Box 12548, Capitol Station
Austin, TX 78711
(512) 463-2120
adam.biggs@oag.texas.gov
Counsel for Tarrant and McClennan
County District Attorneys

Anjali Salvador
Andre Segura
ACLU Foundation of Texas, Inc.
P.O. Box 8306
Houston, TX 77288
(713)942-8146
asalvador@aclutx.org
asegura@clutx.org

/s/ Andrew B. Stephens
ANDREW B. STEPHENS
Assistant Attorney General