**DX-14**

# Updated
# Texas Medical Board (TMB) Frequently Asked Questions (FAQs) Regarding Non-Urgent, Elective Surgeries and Procedures During Texas Disaster Declaration for COVID-19 Pandemic

## April 21, 2020

**\*Disclaimer – The COVID-19 Disaster is a fluid and rapidly evolving situation.  Please check these FAQs often as, events may warrant frequent updates.**

On April 17, 2020, Governor Abbott issued Executive Order GA-15, which will replace Executive Order GA-09 at 11:59 pm on April 21, 2020. The new executive order will be in effect from 11:59 pm on April 21, 2020 until 11:59 pm on May 8, 2020, unless terminated, modified, or extended by the governor.

**1. What will happen to Executive Order GA-09 and the two Texas Medical Board emergency rules associated with it?**

Executive Order GA-09 will expire on April 21, 2020 at 11:59 pm.  When it expires, it will also end the need for the two TMB emergency rules associated with it.  The two emergency rules will no longer be effective and will be withdrawn from the Texas Register.

**2. What is the effect of Executive Order GA-15?**

[Executive Order (EO) GA-15](#) loosens restrictions placed on surgeries and procedures set forth by Governor Abbott.  The loosening of the restrictions is now possible due to actions that resulted in increased hospital bed availability, increased supply of personal protective equipment (PPE), and enhanced supply chains for vital medical resources to address COVID-19.

Executive Order GA-15 continues to focus on preservation of hospital capacity and PPE.  GA-15 recognizes and continues to remind physicians to be mindful of their obligations for the safety of patients, fellow healthcare providers, providing quality

care, and ensuring best possible outcomes for their patients. This obligation is always at the forefront of medical care. But given the unique situation created by the COVID-19 pandemic, these obligations are more critical than ever before.

GA-15 states that all licensed healthcare professionals and facilities must postpone all surgeries and procedures not medically necessary to diagnose or correct a serious medical condition of or to preserve the life of a patient who without timely performance of the surgery or procedure would be at risk for serious adverse medical consequences or death, as determined by the patient's physician.

There are two exceptions to this restriction. If one of the following conditions is met, then the surgery or procedure **can** go forward even if it does not meet the restriction above. The exceptions are:

- Any procedure that, if performed in accordance with the commonly accepted standard of clinical practice, would not deplete the hospital capacity or the PPE needed to cope with COVID-19, or

- Any surgery or procedure performed in a licensed health care facility that has certified in writing to Texas HHSC both (1) that it will reserve at least 25% of its hospital capacity for treatment of COVID-19 patients, accounting for the range of clinical severity of COVID-19 patients, and (2) that it will not request any PPE from any public source—whether federal, state, or local—for the duration of the COVID-19 disaster.

**3. What does the first exception about PPE mean?**

If the procedure is performed in accordance with the commonly accepted standards of clinical practice and would not potentially deplete the hospital capacity or the PPE needed to cope with the COVID-19 disaster, then the procedure may go forward. However, if the procedure could deplete hospital capacity or the PPE needed to cope with the COVID-19 disaster, then the procedure may not go forward, unless the second exception applies, as discussed above.

**4. What does this second exception about facility certification mean?**

The healthcare providers must continue to determine if they have to postpone all non-urgent elective surgeries or procedures, unless the surgery or procedure will be performed in a licensed healthcare facility that has completed a written certification submitted to the Texas HHSC. The certification must state both that:

1. The facility will reserve at least 25% of its hospital capacity for treatment of COVID-19 patients, accounting for the range of clinical severity of COVID-19 patients; and

2. The facility will not request any PPE from any public source, whether federal, state, or local, for the duration of the COVID-19 disaster.

**5. How do I know if the licensed healthcare facility where the surgery or procedure would be completed is one that qualifies for the second exception?**

The Texas HHSC is the agency that is receiving certifications from healthcare facilities. The physician performing the surgery or procedure must verify with Texas HHSC that the facility where the surgery or procedure will be held has submitted a written certification to the Texas HHSC. This verification must be documented in the medical record.

Information from Texas HHSC about how to submit certification for a facility under EO GA-15 can be found [here](here).

**6. Should I reschedule non-urgent elective in-patient, out-patient, and office-based surgeries and procedures?**

Yes, unless the physician determines, that the surgery or procedure cannot be postponed, or that the surgery or procedure meets one of the exceptions in GA-15.

**7. What is the effect of emergency rule 22 Texas Administrative Code (TAC) §190.8(2)(U)?**

The Texas Medical Board (TMB) Executive Committee, during an emergency meeting on April 21, 2020, adopted an emergency rule amendment to 22 TAC §190.8(2)(U). This emergency amendment adds language clarifying that a violation of Executive Order GA-15 related to the practice of medicine will be considered as potential unprofessional conduct.

**8. Is there a mandatory reporting requirement for TMB licensees when the TMB licensee knows or suspects another TMB licensee of violating EO GA-15 like there was EO GA-09?**

No. TMB did not pass an emergency rule that included a violation of EO GA-15 to be defined as a "continuing threat" to the public as was done with EO GA-09. Because a violation of EO GA-15 is not defined as a continuing threat, there was no need for an emergency rule amending the pre-COVID-19 mandatory reporting requirement for TMB licensees when the licensee knows or suspects another TMB licensee of being a continuing threat. These measures were not taken for EO GA-15 because of the availability of hospital capacity and PPE and a flattened curve that did not exist or was unknown at the time EO GA-09 became effective.

However, the duty to report continuing threats as defined in TMB rules prior to the COVID-19 outbreak still remains.

**9. Can I still schedule and perform office-based visits for my patients?**

Office-based visits that do not include surgeries or procedures may continue without prohibition. However, the office-based visits should be conducted in accordance with standard protocols, including safety measures that prevent the spread of COVID-19.

**10. What is not included in the term "procedure"?**

A "procedure" does not include physical examinations, non-invasive diagnostic tests, the performing of lab tests, or obtaining specimens to perform laboratory tests.

**11. If I report a violation, will it be confidential?**

Yes. While the law does not allow for the TMB to accept *anonymous* complaints, a complainant's identity will remain confidential. This means that the TMB will know the complainant's identity, but no one else will.

**12. Can I be sued, fired, or otherwise retaliated against for filing a complaint?**

Texas law prohibits retaliation against any complainant, regardless of the complainant's identity as a physician, patient, family member or concerned citizen.

All complaints to TMB are confidential and your identity will not be disclosed to the individual against whom the complaint is made.

**13. How long will this prohibition on non-urgent elective surgeries last?**

Until [Executive Order GA-15](#) expires on May 8, 2020, unless terminated, modified, or extended by the Governor.

**14. What are some sources that might help a physician in deciding whether to proceed with a procedure or surgery?**

The following sources would be helpful:

- CDC [guidelines](#)
- CMS [guidelines](#)

- American College of Surgeons, American Society of Anesthesiologists, Association of Perioperative Registered Nurses and American Hospital Association - Joint Statement: Roadmap for Resuming Elective Surgery after COVID-19 Pandemic, https://www.asahq.org/about-asa/newsroom/news-releases/2020/04/joint-statement-on-elective-surgery-after-covid-19-pandemic
- Specialty Society Guidance
- Recognized scientific or medical journals, research, or other literature

## 15. Why does the TMB use the phrase "non-urgent elective surgery or procedure"?

Facilities have different levels of need for "elective" surgeries. These levels are often distinguished by the terms "urgent" or "emergent" by facilities. Some facilities or providers may use the term "acuity." Regardless, the **physician must determine** whether, if any medically necessary surgeries or procedures are delayed or canceled, the patient will be at risk for serious adverse medical consequences or death.

**"Elective, Non-urgent"** cases are defined as cases where there is no anticipated short-term or long-term negative impact as a result of delaying a procedure or surgery. Examples include screening for a nonlife-threatening chronic condition or most cosmetic procedures.

**"Urgent or Elective Urgent"** means a surgery or procedure where there is a risk of patient deterioration or disease progression that is likely to occur if the procedure or surgery is not timely undertaken and/or the surgery or procedure is significantly delayed. The resulting decline in the patient's health could make them more vulnerable to COVID-19 and other issues.

**"Emergent"** means a life-threatening condition in which the surgery or procedure must be undertaken and/or cannot be safely delayed for any significant period of time.

**16. What should I do if I determine a surgery or procedure is necessary and will not violate Executive Order GA-15?**

Documentation is key. EO GA-15 expressly states what is needed when a procedure or surgery is done in a facility that has made the requisite certifications to Texas HHSC.

In the context of the clinical practice exception, it is very important that the medical record clearly reflects why the physicians determined a surgery or procedure was urgent and necessary to prevent serious adverse medical consequences or death, as well as the impact on hospital bed availability and usage of PPE. This documentation could include information on the patient's medical history, prescriptions, lab results, imaging, or other relevant factors used to make the determination of the urgent necessity of the surgery or procedure.

**17. If a complaint is received, how will the TMB determine if the surgery or procedure met the requirements of Executive Order GA 15?**

The TMB can only act on a valid written complaint. Complaints can be filed confidentially, but not anonymously. The complainant's identity will remain confidential with TMB. If a complaint is received, then TMB will begin by reviewing the complaint. If there is enough information in the complaint to proceed with an investigation, including requesting medical records for review.

When reviewing the medical records, TMB will determine, based on the medical record documentation, if the surgery or procedure complied with the requirements of EO GA-15. Further, TMB will determine whether or not the standard of care (SOC) was met by, in part, consulting applicable guidelines such as the Centers for Disease Control and Prevention (CDC), Centers of Medical and Medicaid Services (CMS), or other medical or specialty guidelines and literature. These guidelines and the medical records will help determine if the SOC was met and if the surgery or procedure was appropriate and consistent under EO GA-15.

If it appears there was a violation of EO GA-15, TMB will follow all statues, rules, and standard processes when proceeding with an investigation.

**18. What are the benefits resulting from GA-15?**

This Order continues to focus on several key benefits, including:

> 1. It preserves resources such as, Personal Protective Equipment (PPE), ventilators, and creates a general reduction in the overall use of critical medical resources;
>
> 2. It keeps beds available for treatment of COVID-19 patients, especially intensive care unit (ICU) beds; and
>
> 3. It preserves significant healthcare practitioner time and availability which can be devoted to COVID-19 patients.

**19. What can help me make decisions on whether I should perform a surgery or procedure?**

The Texas Medical Board has developed the following questions to help.

1. **Does this prohibition apply to me or my practice location?**

    The prohibition applies to ALL licensed healthcare providers and their delegates. It also applies to all licensed healthcare facilities. If you are a licensed healthcare professional or delegate, or performing the medical act in a licensed healthcare facility, proceed to #2.

    If you are practicing in a non-licensed healthcare facility, then please be aware that the following exception to the prohibition does not apply:

    Any surgery or procedure performed in a licensed health care facility that has certified in writing to Texas HHSC both (1) that it will reserve at least 25% of its hospital capacity for treatment of COVID-19 patients, accounting for the range of clinical severity of COVID-19 patients, and (2) that it will

not request any PPE from any public source—whether federal, state, or local—for the duration of the COVID-19 disaster.

However, the following exception to the prohibition may apply:

Any procedure that, if performed in accordance with the commonly accepted standard of clinical practice, would not deplete the hospital capacity or the PPE needed to cope with COVID-19.

If you are practicing in an unlicensed healthcare facility that meets this exception, then proceed to #2.

2. **Is the medical act a surgery or procedure?**
   - Yes, proceed to #3.
   - No, I am performing another medical act, such as a history, physical exam, non-invasive diagnostics, or a lab test.

   **If your answer is no, you may proceed with the medical act.**

3. **If the medical act is a surgery or procedure, then you must ask the following questions:**
   - Is this medically necessary to diagnose or correct a serious medical condition of or to preserve the life of a patient who without timely performance of the surgery or procedure would be at risk for serious adverse medical consequences or death?
   - Would this patient, without performance of the surgery or procedure, be at risk for serious adverse medical consequences or death?

   **If you answer yes to this question, you can proceed with the medical act.** You should document the medical necessity and serious risk in the patient's medical record.

   **If you answer no to this question, then proceed to #4.**

4. **Could the surgery or procedure deplete hospital capacity or the supply of personal protective equipment needed to cope with the COVID-19 disaster?**

   If your answer is yes regarding the first exception to the prohibition, then you need to determine if the procedure or surgery can proceed under the second exception in EO GA-15. Under the second exception, you may proceed if the surgery or procedure is being performed in a licensed health care facility that has certified in writing to the Texas Health and Human Services Commission both:
   - that it will reserve at least 25% of its hospital capacity for treatment of COVID-19 patients, accounting for the range of clinical severity of COVID-19 patients; and
   - that it will not request any personal protective equipment from any public source, whether federal, state, or local, for the duration of the COVID-19 disaster.

**20. I have read everything, and I am still confused.  In plain English, what I am supposed to do?**

Unfortunately, TMB cannot tell you exactly what to do.  TMB understands these are very difficult times for everyone around the world.  While TMB has a duty to enforce the law, TMB also wants to help patients and licensees navigate providing care as much as possible.  TMB cannot provide an exhaustive list of approved or prohibited surgeries and procedures during this time.  Nor can TMB answer specific questions about whether or not to provide certain care.

However, TMB can provide these **<u>10 Tips</u>**:

1. GA 15 and the TMB rules allow providers to use their judgment in determining whether timely performance of a surgery or procedure is needed to prevent serious adverse medical consequences or death;
2. If you normally could or would wait a few weeks to provide the surgery or procedure being considered for a specific patient based on the patient's unique circumstances, then that might help you decide what to do;

3. If you normally could not or would not wait a few weeks to provide the surgery or procedure being considered for a specific patient based on the patient's unique circumstances, then that might help you decide what to do;
4. If you do proceed with a surgery or procedure during this time, then be sure to clearly document why you made that decision;
5. Referencing legitimate literature and guidelines, such as from the CDC, CMS, the Joint Statement from ACS, ASA, APRN, and AHA, or other specialty guidelines will be very helpful;
6. TMB cannot put anyone in jail;
7. The decision to hold a temporary suspension or restriction hearing will meet the same standard as before the COVID-19 disaster;
8. TMB understands the importance of having as many safe licensees available as possible during this time;
9. The TMB Board Members include 12 physicians that also must navigate these times, the Executive Order, and the rules while providing safe patient care; and
10. TMB is and will continue to be understanding that these are unprecedented times.